Atkinson v. Kirkpatrick.

ALICE W. ATKINSON et al., *Appellants*, v. E. KIRKPATRICK, *Appellee*.

No. 18,379.

SYLLABUS BY THE COURT.

1. SUPPLEMENTAL ANSWER—*Matters Arising Subsequent to Filing Original Answer May be Pleaded*. It is no objection to a supplemental answer and cross-petition that it alleges matters which have arisen or have become known subsequent to the filing of the original answer, provided the facts alleged be material and go to divest the plaintiff of the right to maintain the action.

2. ——— *Same*. In an action by a landlord to recover rent, defendant filed a supplemental answer setting up a counter claim for damages which arose after the original answer was filed, and which it was alleged resulted from the failure of the landlord to comply with his covenant to repair. *Held*, that the defense was properly raised by supplemental answer.

3. DAMAGES—*Which Could Have Been Averted—Not Recoverable*. It is a general rule of the law of damages, that notwithstanding the fault of the other party, the one who is injured in person or property will not be permitted to recover damages which he might have averted by reasonable diligence.

4. —— *Same.* A tenant of a store building under lease, by which the landlord covenanted to repair, being sued for rent, set up a counter claim for damages to stock caused by water from a defective down-spout and by leaks in the pipes of a water-closet. The defense to the counter claim was that the loss resulted from the failure of the tenant to take reasonable precautions to protect his stock after he knew of the risk to which it was exposed. *Held,* error for the court to refuse to instruct the jury that even though the landlord had failed to comply with his covenant to repair, the tenant could not remain inactive and allow increased damages to accrue and recover them from the landlord, when at slight expense he could have averted the damages or reduced the amount thereof.

5. LEASE—*Clear and Unambiguous—Not Affected by Usage or Custom.* A part of the counter claim set up in the original cross-petition was for water rent paid by the tenant for water furnished the building and used by the tenant. The written lease made no provision with respect to which party should pay for the water, but the answer alleged, and the jury found, that a custom, generally known and acquiesced in, prevails at Arkansas City, by which, in the absence of any agreement, the landlord pays for water furnished the tenant in case of the lease of a store building. *Held,* that the existence of the alleged usage or custom could impose no liability upon the landlord, nor could it create a contract where the parties have made none, and that proof of such usage is not admissible where the terms of the written lease are clear and unambiguous.

Appeal from Cowley district court; GEORGE H. BUCK-MAN, judge *pro tem.* Opinion filed October 11, 1913. Reversed.

*C. T. Atkinson,* of Arkansas City, for the appellants.

*J. Mack Love,* and *C. W. Wright,* both of Arkansas City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The plaintiffs brought suit to recover a balance of $61.45 claimed to be due as rent of a store building. The answer set up a claim of $137.45 on

Atkinson v. Kirkpatrick.

account of repairs made and damages to stock by reason of the defective condition of the premises, and also a further claim of $40 water rent, on the ground that a custom prevails in Arkansas City by which the landlord of business property, in the absence of any agreement, pays for the water furnished to the building and used by the tenant. The defendant asked judgment in his favor for $105.95.

On July 6, 1910, a supplemental cross-petition was filed, claiming additional damages to the stock of merchandise, which it was alleged occurred subsequent to the filing of the original answer, and amounting to the sum of $1165.35. Issues were joined, and on the trial the jury returned a verdict in favor of the defendant in the sum of $650. The court overruled a motion for a new trial and entered judgment on the verdict, from which plaintiffs have appealed.

There is a contention that the damages occurring after the commencement of the action could not be made the subject of a counter claim, and that it was error to admit evidence in support thereof. The abstract shows that the plaintiffs made no objection to the supplemental answer, but filed a reply thereto; and there is no record of any objection to the introduction of evidence under the issues raised by the supplemental pleadings.

There are cases holding that even an original answer setting up matters occurring subsequent to the institution of the action is sufficient, where the plaintiff fails to demur and joins issues by replying. (*Puffer v. Lucas,* 101 N. Car. 281, 7 S. E. 734.) The rule appears to be that any matter may be set up as a defense in a supplemental answer, provided it be material. (21 Encyc. Pl. & Pr. 46.) In *Howard v. Johnston,* 82 N. Y. 271, it was held that the provision of the code allowing supplemental pleadings authorizes the court to permit a defendant to set up a set-off or counter

claim based upon facts arising since the filing of the original answer.

In the present case the plaintiffs brought suit upon a written lease to recover a balance claimed to be due for rent. The supplemental answer and cross-petition set up a claim for damages arising after the filing of the original answer; the damages were alleged to have been caused by the plaintiffs' failure to comply with the terms of the contract to keep the premises in repair. The supplemental answer and cross-petition alleged matters which go to divest the plaintiffs of the right to maintain the action, and no reason appears why the whole controversy should not be settled in one action. Whenever the facts alleged in the supplemental answer have arisen or have become known since the original answer was filed, and they have a material bearing upon the final determination of the action, they may be set up by a supplemental pleading. (31 Cyc. 506.)

By the terms of the lease the defendant was to pay an annual rental of $2000. The owners were to make all necessary repairs and keep the premises in a tenantable condition; the tenant was to make no repairs of any kind without first submitting the same to the landlord and obtaining written approval thereof. When the action was commenced the defendant had occupied the premises two years and ten months, and had promptly paid the rental except to retain $40 water rents, and certain small items for repairs, which, so far as the evidence shows, were made without any authority from the plaintiffs as provided in the lease. This action was brought to recover the amount retained by the defendant for the water rent and cost of repairs. The principal claim of damages was for loss on defendant's stock caused by water from a defective down-spout and leaks in the pipes of a water-closet, most of which occurred during heavy rains in June and July after the suit was commenced. In the reply,

plaintiffs allege that the loss was occasioned by contributory negligence of the defendant in failing to take reasonable precautions to protect his stock, and by reason of the unauthorized and ineffectual efforts of the defendant to repair the defects of the premises.

We think the court failed to submit by proper instructions the question of contributory negligence of the defendant. Instructions were asked by the plaintiffs which correctly stated the law that it was incumbent on the defendant to reduce his damages as much as reasonably lay in his power; that even though plaintiffs had failed to comply with their covenant to repair the leased premises the defendant could not remain inactive and allow increased damages to accrue, and recover them from the landlord, when at slight expense he could have averted the damages or reduced the amount thereof. These instructions were refused.

It is a rule of the law of damages that notwithstanding the fault of the other party the one who is injured in person or property will not be permitted to recover damages which might have been averted by reasonable diligence. (*K. P. Rly. Co. v. Mihlman,* 17 Kan. 224, 234; *Town Co. v. Leonard,* 46 Kan. 354, 358, 26 Pac. 717; *Frick Co. v. Falk,* 50 Kan. 644, 32 Pac. 360; *Holly v. City of Neodesha,* 88 Kan. 102, 127 Pac. 616.)

Where the tenant is aware of the risk to which his property will be exposed, he can not recover full damages when he has made no effort to prevent its loss. In *Huber v. Ryan,* 57 N. Y. Sup. Ct., App. Div., 34, a case in all respects similar to this, part of the defendant's counter claim was for injury to personal property which he claimed resulted from the overflow of a defective water-closet. In the opinion the court said:

"The defendant was not justified in creating or adding to such damage by leaving his property where he knew it would be subject to the injury complained of." (p. 37; *Cook v. Soule et al.,* 56 N. Y. 420; 13 Cyc. 74, 75, and cases cited; *Hendry v. Squier et al.,* 126 Ind. 19; 25 N. E. 830, 9 L. R. A. 798; *Goldberg v. Besdine,* 76

N. Y. Supr. Ct., App. Div., 451, 78 N. Y. Supp. 776. See, also, 24 Cyc. 1098.)

None of the instructions given covered the question of the duty of the defendant to use reasonable efforts to minimize his damages, and there was evidence to warrant the giving of such an instruction as that requested. It was error to refuse it.

In answer to a special question the jury made a finding that a general custom known and acquiesced in prevails at Arkansas City, that, in the absence of any agreement between a landlord and tenant, the former pays the water rent for water furnished the leased premises. The court of its own knowledge takes notice that no such custom prevails in other cities of the state. In the case of the leasing of rooms in a modern office building, where the amount of water used by the tenant is negligible, the custom is for the landlord to furnish water as well as janitor service, heat and light, and even elevator service. We doubt very much that the custom relied upon can be shown to prevail generally at Arkansas City, although there was some evidence offered by the defendant to that effect. The plaintiffs are residents of Butler county, never having resided at Arkansas City, and there was no evidence that they had any knowledge of the existence of the rather anomalous custom by which it was claimed they became liable to pay for water furnished their tenants.

In 12 Cyc. 1069, 1070, under the title of "Customs and Usages," there appears a list of customs affecting the relation of landlord and tenant which have been recognized by the courts, but we find no mention of any custom or usage similar to the one under consideration. Since it does not prevail elsewhere in the state, it can in no event be more than a local usage; and before a landlord who has never been a resident of the place where it is claimed to prevail could be bound by it there must be proof that he had actual knowledge of it.

The general rule, to which there are some exceptions, is stated in 29 A. & E. Encycl. of L. 400, as follows:

"When a usage is a local one, that is, a usage of a particular business in a particular place, or even a usage of trade generally in a particular place, it can be operative only in respect to nonresidents who are shown to have had actual knowledge of it. There can be no presumption that a stranger is cognizant of a usage prevailing in a particular place; and therefore there can be no presumption that he contracted with reference to it. Hence, in order to make such a usage effective, it must appear that it was actually known to a nonresident."

(See, also, *Miller v. Moore,* 83 Ga. 684, 10 S. E. 360, 20 Am. St. Rep. 329; *Gilmer v. Young,* 122 N. Car. 806, 29 S. E. 830.)

The weight of authority as well as sound reason seems to support the rule, although cases will be found to the contrary. One exception recognized by textwriters and sustained by many authorities is that a party to bank paper payable at a particular bank will be bound by a usage which is general among banks at that place. (Lawson on Usages and Customs, p. 53; 1 Morse on Banks and Banking, 3d ed., § 221; *Mills v. Bank of the U. States,* 24 U. S. 431; 29 A. & E. Encycl. of L. 406.)

But aside from these considerations, proof of such a usage or custom is not admissible for the purpose of imposing a liability of this nature upon one of the parties unless, independently of the usage or custom, there was a contract obligating him to pay. Had there been in the terms of the written lease some ambiguity or uncertainty, or some obvious omission, evidence of usage or custom would have been proper to explain the ambiguity or to supply the omission. But there is nothing in the language of the instrument that is uncertain or that requires explanation; nor is there any obvious omission that can be supplied by proof of usage or custom. The parties entered into a plain, un-

ambiguous contract for the lease of property for a term of years. There is nothing in the contract with reference to the payment for water used on the premises; and usage or custom can not create a contract or liability where none otherwise exists.

In *McSherry v. Blanchfield,* 68 Kan. 310, 75 Pac. 121, it was ruled in the syllabus:

"Usage or custom can not make a contract when parties themselves have made none.

"The proper office of usage or custom is to explain technical terms in contracts to which peculiar meanings attach; to make certain that which is indefinite, ambiguous or obscure; to supply necessary matters upon which the contract itself is silent; and generally to elucidate the intention of the parties when the meaning of the contract can not be clearly ascertained from the language employed." (Syl. ¶¶ 2, 3.)

In *Savings Bank v. Ward,* 100 U. S. 195, it was said:

"Evidence of usage is not admissible to contradict or vary what is clear and unambiguous, or to restrict or enlarge what requires no explanation. Omissions may be supplied in some cases by such proof, but it can not prevail over or nullify the express provisions of the contract. So, where there is no contract, proof of usage will not make one, and it can only be admitted either to interpret the meaning of the language employed by the parties, or where the meaning is equivocal or obscure." (p. 206.)

To the same effect is *Thomas v. Trust Co.,* 81 Ohio St. 432, 91 N. E. 183, 26 L. R. A., n. s., 1210.

The court erred in submitting to the jury the claim for water rent based upon the existence of the alleged custom.

The judgment is reversed and a new trial ordered.