No. 20,128.

THE FIDELITY & DEPOSIT COMPANY OF MARYLAND, *Appellee*, v.
CALLAHAN BROTHERS, *Appellant*.

SYLLABUS BY THE COURT.

1. INSURANCE—*Surety Bond—Action for Premium—Company Not Bound by Contract between Assured and Third Party—Release Void.* A surety bond for the faithful performance of a contract with a drainage district, under the provisions of section 3026 of the General Statutes of 1909, was furnished by a casualty company under a contract by which the principal agreed to pay an annual premium each year in advance. The contract required three years for its completion. The principal refused to pay the premium for the third year on the ground that he had made an arrangement with the board of directors of the drainage district, by which the board canceled the bond and released the surety; *held*, that the attempted release and cancellation of the bond furnished no defense to an action to recover the stipulated premium, because, (*a*) the contract right of the surety to collect the premium could not be affected by an agreement between the board and the contractor to which the surety was not a party. (*b*) As the statute required the board to exact the bond but conferred no power upon it to cancel the same or release the surety before the completion of the contract, the attempted cancellation and release was void.

2. EVIDENCE—*Unambiguous Contract—Usage—Custom.* There being no uncertainty or ambiguity in the contract for the payment of the premium, evidence of usage or custom of other surety companies in such matters was properly excluded.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed July 8, 1916. Affirmed.

*D. A. Murphy, John T. Harding, S. F. Harris, H. L. McCune,* and *W. H. Brown,* all of Kansas City, Mo., for the appellant.

*E. S. McAnany, M. L. Alden, Thomas M. Van Cleave,* and *Samuel Maher,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: In the court below plaintiff recovered judgment for a sum claimed to be due from the defendant for premiums upon certain bonds executed by it as surety. The defendant appeals.

The plaintiff is a corporation authorized to conduct an insurance and casualty business. The defendant is a corporation engaged in contract work. On November 15, 1910, the Kaw Valley Drainage District of Wyandotte county, which is a public corporation, let a contract to the defendant for the construction of levies and other improvements along the Kansas river. It became necessary for defendants to furnish bonds, one to the drainage district for the faithful performance of the contract, and one to the state of Kansas, guaranteeing the payment for labor and material. On the 23d of November, 1910, it applied to plaintiff to furnish the bonds, and in the written applications agreed that in consideration of plaintiff furnishing the surety it would pay for the performance bond, five dollars for every $1000 per annum on the amount of the contract each year in advance, and the contract price was estimated to be $500,000. For the bond running to the state it agreed to pay one dollar per thousand on the amount of the bond "each year in advance." Upon these applications the bonds were executed by defendant as principal and plaintiff as surety. Thereafter defendant began work under the contract, and paid the yearly premiums in advance for the first year, and on November 23, 1911, paid them in advance for the second year. When the premiums became due for the third year it refused payment. The reasons for its refusal are thus stated by the secretary of the defendant company, who testified:

"Upon getting this statement from the plaintiff for the third year premium, I went before the drainage board and told them that we thought we had sustained sufficient damage on account of the changes in the work, etc., and that they should pay the premium on this bond, and they finally, after discussing the matter back and forth, said: 'We don't think you should pay it, and we want to save ourselves the expense of paying it, so we will just cancel it'."

Thereafter and on January 26, 1913, the board of directors of the drainage district adopted a resolution reciting that about three-fourths of the work provided for in the contract had been completed, and that the board would retain ten per cent of all estimates under the contract, amounting approximately to $40,000, until the work was completed. In view of these conditions the resolution declared that the board can-

celed the performance bond, retaining in lieu thereof the percentage, and that the plaintiff company was released from all liability as surety on the bond. After the adoption of the resolution the drainage district turned the bond over to the defendant. The work provided for in the defendant's contract was not completed until November 22, 1913.

1. The first contention is that defendant is not liable for payment of the premium, because the bond was canceled and plaintiff released from all liability thereon by the action of the drainage board. There are two reasons why the defense is unavailing. There was a contract between plaintiff and defendant by which premiums were to be paid each year in advance, and the agreement for payments in this way formed a substantial part of the consideration for the execution of the bond by the plaintiff. The attempt to cancel the bond and release the surety was through an arrangement between the drainage district and the defendant to which the plaintiff was not a party. The contract rights of plaintiff could not be destroyed or affected by the adoption of the resolution, nor by any subsequent agreement entered into without its consent, by defendant and the drainage board.

The second reason is that the drainage district was without authority to take any action looking to the release of the bond. The statute which required the giving of the performance bonds reads as follows:

"Every contractor shall be required to give a bond to the board of directors in a sum sufficient to secure the proper execution of his contract and conditioned to pay all damages which shall result to the landholders of the district from failure to perform their contracts or by reason of negligence in the performance of the same." (Gen. Stat. 1909, § 3026.)

The statute required the board to exact the bond, but conferred no power upon it to cancel the bond, or to release the surety before the completion of the contract. It had as much power to dispense with the taking of the bond in the first instance. If the board could have canceled this bond on the ground that only one-fourth of the work remained to be completed, it could have released it at any time after the bond had been executed, and thus dispensed with it entirely. It is true the board is given (Gen. Stat. 1909, § 3006) certain general

powers in the conduct of the business affairs of the district, but these general powers are not broad enough to authorize the board to cancel a bond of this character or to release the sureties thereon before the conditions of the bond have been performed. The statute requiring the board to take the bond is mandatory, and requires that the bond be conditioned to pay all damages to the landholders of the district occasioned by any failure to perform the contract, or by reason of negligence in the manner in which it is performed. Until the work was finally completed it could not be ascertained whether the landholders of the district would have claims against the contractor for damages. The bond is not for the sole benefit of the drainage district as a corporation, but its purpose is also to secure landholders of the district against damages. Notwithstanding the attempted cancellation and release the plaintiff's liability as surety on the bond continued until the completion of the contract, and the release would not have furnished the plaintiff a defense to an action brought by a landholder.

2. The other contention made by the defendant is that the trial court erred in ruling out evidence offered to show a prevailing custom among bonding companies to rebate the premium for surety bonds where the work is completed during the year for which the premium has been advanced. The contract in this case is not ambiguous in any respect. Necessarily the number of years for which the defendant was to pay the premium was not stated, because it was not known how long the contract would require; but in plain, unambiguous language it was provided that the premiums be paid yearly in advance.

The parties might have contracted for a rebate based upon a proportionate or short-time rate for the fractional periods of the year; but they did not. Proof of a custom or usage among other companies can not supply such a contract, nor is such proof admissible or competent where the intention of the parties appears from the language employed. As was said in *McSherry v. Blanchfield,* 68 Kan. 310, 75 Pac. 121, "But beyond this, usage or custom can not make a contract when the parties themselves have made none." (p. 312.)

To the same effect see *Eckhardt v. Taylor,* 90 Kan. 698, 136

Pac. 218, and *Atkinson v. Kirkpatrick*, 90 Kan. 515, 135 Pac. 579. In the latter case it was said:

"Had there been in the terms of the written lease some ambiguity or uncertainty, or some obvious omission, evidence of usage or custom would have been proper to explain the ambiguity or to supply the omission. But there is nothing in the language of the instrument that is uncertain or that requires explanation; nor is there any obvious omission that can be supplied by proof of usage or custom." (p. 521.)

The evidence as to custom was properly excluded and it fol-. lows that the judgment will be affirmed.