### UNITED STATES v. FOLK et al.

(District Court, E. D. Oklahoma.  June 26, 1919.)

#### No. 2131.

APPEAL AND ERROR ⬤═482—BOND—POWER TO VACATE—"FINAL DETERMINATION."

Where an interlocutory order appointing a receiver and granting an injunction was ordered stayed by Circuit Court of Appeals, on defendants giving a bond to pay all costs and damages that might be adjudged on "final determination" of matter, a bond given pursuant to such order cannot be discharged by the District Court pending an appeal from its judgment on the merits.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Final Determination.]

In Equity.  Suit by the United States against Minnie Folk, Charles Page, and others.  On motion by defendant Charles Page to have a bond discharged.  Motion denied.

Stuart, Cruce & Cruce, of Oklahoma City, Okl., for movant.

D. H. Linebaugh, Sp. Asst. Atty. Gen., and Alvin F. Molony, Asst. U. S. Dist. Atty., of Muskogee, Okl., for the United States.

Malcolm E. Rosser, of Muskogee, Okl., and J. M. Hill, of Ft. Smith, Ark., for other defendants.

WILLIAMS, District Judge.  In Folk v. U. S., 233 Fed. at page 193, 147 C. C. A. 199, Sanborn, Circuit Judge, for the court, said:

"However, *this litigation presents claims of some of the parties which have not been material to the decision of the question whether or not the receiver was rightly appointed and the injunction rightly issued* [italics mine], the defendants have offered to give a sufficient bond to protect all parties in interest during the pendency of this suit, and the court is of the opinion that it is wise and equitable to accept and require such a bond.  The order of the court will accordingly be that, upon the filing in this court within 60 days of the date of

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the filing of this opinion of a bond with surety approved by the judge of the court below in such an amount as shall be fixed by this court on 10 days' notice to be given by Page and Josey to the complainants and the other defendants herein, conditioned to account for and pay over to those parties to this suit who shall be finally adjudged to be entitled thereto the profits that have been and shall be derived by them from the land in controversy between March 8, 1915, the date when the receiver was appointed, and the final determination of this suit, to file with the clerk of the court below a verified account of the operation of the property showing generally the expense, the proceeds, and the profit thereof between March 8, 1915, and May 1, 1916, on or before August 1, 1916, to file on or before the 25th of each month, commencing on June 25, 1916, such an account of the operation thereof during the preceding month, to pay to the parties ultimately adjudged entitled thereto any damages resulting to them from the negligence or mismanagement of the property, and to abide by and perform the further orders of this court and of the court below in the premises, the order of the court below, dated March 8, 1915, appointing the receiver, directing the defendants to deliver the possession of the land, improvements, and property to him, and enjoining the defendants from operating or interfering with it, shall be in all things reversed and set aside, and this case shall be remanded to the court below for further proceedings not inconsistent with the views expressed in this opinion. * * *"

On June 24, 1916, the following order was entered by the United States Circuit Court of Appeals, Eighth Circuit, to wit:

"This matter came on to be heard on the 24th day of March, A. D. 1915, before the Honorable Walter H. Sanborn and the Honorable Elmer B. Adams, judges of the above-entitled court, upon the application of the appellants, Minnie E. Folk, Harry B. Folk, Edward C. Hanford, the Gem Oil Company, a corporation, Charles Page, and R. A. Josey, for an order allowing a supersedeas to the order heretofore made in the District Court of the United States for the Eastern District of Oklahoma, appointing a receiver and granting an injunction enjoining said appellants from certain acts and things—the appellants appearing by their solicitors, Rice & Lyons and Edward C. Hanford, and J. D. Johnson and Loomis C. Johnson, of counsel; the appellees appearing by W. P. Z. German, Special Assistant to the United States Attorney for the Eastern District of Oklahoma, and R. C. Allen, Esq., attorney for the Creek Nation of Indians; and it appearing to the court that on the 8th day of March, 1915, an order was made and entered in said cause in the District Court of the United States for the Eastern District of Oklahoma by the judge of said court, appointing a receiver and granting an injunction, from which said order the appellants on the 19th day of March, 1915, appealed to this court, which said appeal was allowed and security for costs given, and a citation issued to said appellees citing and admonishing them to be and appear at a session of the United States Circuit Court of Appeals for the Eighth Circuit, to be holden at St. Louis, in the state of Missouri, within thirty days from the date of said order appointing a receiver, that is, before the 8th day of April, 1915, next.

"And the matter having been fully considered by the court, it is considered that a supersedeas and stay from said order appointing a receiver should be and hereby is allowed upon the following conditions, to wit: That said appellants execute and file in this court a bond in the sum of two hundred thousand ($200,000) dollars, running to the United States of America as obligee, with good and sufficient security, the sureties to be approved by the District Judge of the Eastern District of Oklahoma, conditioned to pay all costs and damages that may be adjudged against them on account of said appeal, and to account for on the final determination of this matter, to whomsoever shall be adjudged to be entitled thereto, all proceeds derived from the sale of oil and gas produced upon the property in controversy, and to do and perform all things provided, and abide the orders of this court.

"It is further ordered that said appellants Page & Josey shall diligently develop and improve the lands in controversy, so as to preserve the same and

protect them against loss and damage from drainage; that they shall keep a complete and accurate account of all oil and gas produced upon said premises, and of all sales of oil and gas made by them, the price obtained for the same, and the amounts received therefor, and that the appellee, the United States of America, by its duly constituted officers, shall at all reasonable times have access to the books and accounts of appellants, showing the production of oil and gas on said lands, and the sales made and receipts therefor, the expenditures made or expenses incurred, and all matters pertaining to the operation and development of said property, and that said appellee shall have the privilege at all reasonable times of entering upon said property to examine the operations being carried on by the appellants, and the quantities of oil and gas being produced by them, and that upon the final determination of this matter said appellants shall quit and surrender up said property to whomsoever shall be adjudged to be entitled thereto, free and clear of all incumbrances not arising incident to the operation and development of the same.

"It is further ordered that J. W. McLoud, receiver herein, shall turn over to appellants Page & Josey, all oil and property, of whatsoever kind and wheresoever situated, taken or received and held by him under and by virtue of said order appointing a receiver, and that he shall render to said appellants an account of all production of oil and gas on said lamds, and of all sales made by him and proceeds received therefrom during the time that he has held possession of said property, and he shall pay to the appellants Page & Josey all sums of money received by him from the sale of oil and gas from said property, less such part thereof as he shall have expended as necessary expenses in connection with the performance of his duties as receiver during said time, and any bills or accounts incurred by him incident to the operation and development of said property during said time, and which have not been paid shall be taken care of by the appellants, and should it be that said receiver has actually expended moneys in the performance of his duties aforesaid for which he has not been reimbursed, the amounts thereof shall be paid to said receiver by the said appellants from sales of oil or gas from said property.

"It is further ordered that any one of the Circuit Judges of this circuit may, from time to time, require of the appellants an additional bond or bonds, such as in his judgment may be necessary and proper, and approve the same."

The condition of said bond is as follows:

"Whereas, the above-named Charles Page * * * have prosecuted an appeal to the United States Circuit Court of Appeals for the Eighth Circuit, to reverse the interlocutory order and decree appointing a receiver and granting an injunction made and entered in the above-entitled cause by the judge of the District Court of the United States in and for the Eastern District of Oklahoma on the 8th day of March, 1915, which said appeal was allowed on the 19th day of March, 1915, and security for costs given, and a citation having issued to said appellees, citing and admonishing them to be and appear at a session of the United States Circuit Court of Appeals for the Eighth Circuit to be holden at St. Louis, in the state of Missouri, within thirty days from and after the date of said order; that is, before the 8th day of April, 1915, next: Now, therefore, the conditions of this obligation are such that if the above-named principal obligors shall prosecute said appeal to effect and answer all damages and costs, if they shall fail to make good their plea, and shall pay all costs and damages that may be adjudged against them on account of said appeal, and shall account for, on the final determination of this matter, to whomsoever shall be adjudged to be entitled thereto, all proceeds derived from the sale of oil and gas produced upon the property in controversy, and shall do and perform all things provided by the order of this court allowing this supersedeas to the order appealed from, and shall abide the orders of this court, then this obligation shall be void; otherwise, the same shall be and remain in full force and virtue."

It is essential to determine what is meant by the term "on final determination of this matter," as used in said bond. In Ex parte Rus-

sell, 80 U. S. (13 Wall.) 664, 20 L. Ed. 622, the Supreme Court with reference to a certain act of Congress said:

"It authorizes the Court of Claims, on behalf of the United States, at any time while a suit is pending before, or on appeal from, said court, or within two years next after the final disposition of such suit, to grant a new trial upon such evidence as shall satisfy the court that the government has been defrauded or wronged. The question is: What is meant by the final disposition of the suit from which the two years of limitation is to date? And it seems to us there is hardly room for a doubt. Looking at the words in their collocation with the previous words, it seems evident that the final determination of the suit has reference to its final determination on appeal (if an appeal is taken),or, if none is taken, then to its final determination in the Court of Claims. The natural meaning of the words leads to the same conclusion. The final determination of a suit is the end of litigation therein. This cannot be said to have arrived as long as an appeal is pending."

In Bellinger v. Thompson et al., 26 Or. 320, 37 Pac. 714, 40 Pac. 229, the court said:

"After a bond has been given, the heir, legatee, or creditor of an estate acquires and has a vested interest in it, and the power of the county court over it ceases, except in a proceeding authorized by law. * * * After the bond has been given, the power of the county court over it ceases, and the heirs, legatees, or creditors for whose security it is given have a vested interest therein, of which they can only be deprived by some proceeding known to the law."

It has been held that the court appointing a trustee has no inherent power, on the giving of a new bond, to discharge the sureties on the old bond. Commonwealth v. Risdon, 4 Brewst. (Pa.) 165; Richter v. Leiby, 101 Wis. 434, 77 N. W. 745.

Fidelity & Deposit Co. of Maryland v. Callahan Bros., Inc., 98 Kan. 547, 158 Pac. 658, involved an action brought for premiums upon a surety bond; it being contended that same were not due, because the bond had been canceled and surety released by the commissioners of the drainage district. In the opinion it is said:

"The attempt to cancel the bond and release the surety was through an arrangement between the drainage district and the defendant, to which the plaintiff was not a party. The contract rights of plaintiff could not be destroyed or affected by the adoption of the resolution, nor by any subsequent agreement entered into without its consent, by defendant and the drainage board. The second reason is that the drainage district was without authority to take any action looking to the release of the bond. The statute which required the giving of the performance bonds reads as follows: 'Every contractor shall be required to give a bond to the board of directors in a sum sufficient to secure the proper execution of his contract and conditioned to pay all damages which shall result to the landholders of the district from failure to perform their contracts or by reason of negligence in the performance of the same.' * * * The statute * * * conferred no power upon it to cancel the bond, or to release the surety before the completion of the contract. * * * If the board could have canceled this bond on the ground that only one-fourth of the work remained to be completed, it could have released it at any time after the bond had been executed. * * * Until the work was finally completed it could not be ascertained whether the landholders of the district would have claims against the contractor for damages. The bond is not for the sole benefit of the drainage district as a corporation, but its purpose is also to secure landholders of the district against damages. Notwithstanding the attempted cancellation and release, the plaintiff's liability

as surety on the bond continued until the completion of the contract, and the release would not have furnished the plaintiff a defense to an action brought by a landholder."

On the 29th day of May, 1918, in this court judgment on the merits of the case was rendered in favor of the defendant Minnie Folk, née Atkins, as against all defendants and complainant in said cause, subject only to the right, title, and interest of the defendants Page and Hanford, claiming by, through, and under her, and forever quieted as against the complainant and all the other defendants in said cause and all those claiming under them—title in favor of the said Minnie Folk, and said Charles Page and Edward C. Hanford, claiming under her. Appeal is being prosecuted from this judgment to the Eighth Circuit Court of Appeals.

The petitioner Page represents to this court that the $900,000 bond was made by a surety company, and the premium thereon is $10,000 per year, and is an unjust burden upon him and the property and royalties owned by him and his associates, and alleges that there is no necessity for a receiver and no legal grounds for the appointment of one in said case, but that the bond was voluntarily made, and has long since served its purpose, and should not further be held and enforced against him and his associates; that he is developing the land for oil and gas, and is solvent, and has been solvent since the beginning of the litigation. He asks that he and the surety be discharged from any further liability on said bond, except as to obligations theretofore incurred.

This bond in its obligations carries within its scope all liabilities that may arise in the final determination of said case. In this proceeding, in view of the terms of the order and conditions of the bond, this court has not power to decrease or limit its obligation. Pending an appeal a receiver may be appointed, or a receivership denied, or a prior receivership vacated in rendering a final judgment by the trial court, as the facts in the case may justify. The obligations of this bond vested with its execution, and can be discharged only by a final determination of the matter. That means after the appeal has been determined.

The motion must be denied.