J. W. ROGERS, RECEIVER OF THE STATE BANK OF GERING, APPELLANT, v. NATIONAL SURETY COMPANY, APPELLEE.

FILED NOVEMBER 10, 1927.   No. 26048.

*Butler & James* and *Edward J. Lambe,* for appellant.

*R. C. Clarke, contra.*

Heard before GOSS, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

EBERLY, J.

This is an appeal by J. W. Rogers, as receiver of the State Bank of Gering, plaintiff, from an adverse judgment in an action brought by such receiver against the National Surety Company of New York as defendant. The controlling facts involved in this litigation are as follows: The State Bank

of Gering failed September 28, 1922. In due course of proceedings the plaintiff was appointed and qualified as receiver thereof. From January, 1919, to date of the failure, this bank had a capital of $25,000 and a surplus of $7,500. It had been designated as a depository of public funds by the proper corporate authorities of Scotts Bluff county, and at the time "it closed its doors" there was on deposit therein $49,505.06, and there was owing by it to the county of Scotts Bluff, as interest accrued, an additional sum of $2,414.49. It also appears that on or about January 8, 1921, this bank, as principal, and the National Surety Company of New York, as surety, had executed and delivered to the county of Scotts Bluff a bond in the sum of $10,000. Its conditions were:

"Whereas, the said bank, in consideration of said deposit, and for the privilege of keeping the same, has agreed to pay and will pay to Scotts Bluff county the sum of not less than two per cent. (2) per annum on account of said deposit, the same shall be paid quarterly upon the daily average of the sum of such amount as the said bank shall have on deposit for the quarter or any fraction thereof next preceding the payment of said percentum, which shall be computed and credited to the account of Scotts Bluff county and shall become a part thereof.

"Now, therefore, if the said State Bank of Gering, of Gering, Nebraska, shall at the end of every month render to the treasurer of said Scotts Bluff county and county board a statement in duplicate showing the daily balance of the county of Scotts Bluff moneys held by it during the month next preceding, and the accretions thereof, and how the same has been credited, and shall well and truly keep all said sums of money so deposited, or to be deposited, as aforesaid, subject to the check and order of county treasurer as aforesaid, and shall pay over the same and each and every part thereof, upon the written demand of the county treasurer, and shall estimate, calculate and pay said percentum as aforesaid, and to his successor in office as shall be by him demanded, and shall in all respects save and keep

the county of Scotts Bluff and said county treasurer harmless and indemnified for and by reason of the making of the said deposit or deposits, then this obligation shall be void; otherwise to be and remain in full force and virtue, subject to the limitations and provisions of the rider attached and forming a part hereof."

"Attached to and forming a part of depository bond in the sum of $10,000 on behalf of the State Bank of Gering, in favor of Scotts Bluff county, Nebraska.

"The liability of the surety hereon shall be limited to the deposits of said county in excess of fifty per cent. of the paid up capital stock of said bank.

"Provided, further, that any right of defense to which the surety may be entitled by reason of the deposits being in excess of the statutory limit is hereby waived."

This bond had been accepted and approved.

After the bank's failure the surety company, upon demand, paid the county treasurer of Scotts Bluff county the sum of $10,764.02, and received in consideration thereof from that officer an assignment in writing of the "sum of $10,764.02, with interest, on deposit in the State Bank of Gering, Gering, Nebraska, and thereby subrogated the said surety to all its rights and remedies against said bank."

On this assignment an action was commenced against the receiver of the failed bank, having for its purpose securing a judgment making said claim a charge against the assets of the bank and also against the depositors' guaranty fund. The right of recovery was put in issue by proper pleadings and a trial on the merits was had. After appeal to this court (State v. State Bank of Gering, 114 Neb. 213), the action was finally determined in favor of the surety company and adversely to the receiver and the depositors' guaranty fund. The final judgment rendered in said cause in favor of the surety company and against the guaranty fund was paid in full by the guaranty fund on or about April 21, 1926.

The present action was commenced June 1, 1926, as an original action by the receiver in behalf of the department

of trade and commerce for the use and benefit of the depositors' guaranty fund of the state of Nebraska, and was based solely upon the proposition that the depositors' guaranty fund and the National Surety Company were, in view of the facts narrated, in truth and in fact, cosureties for the public funds deposited in the State Bank of Gering, and that the former having paid the entire sum, to wit, $51,-919.55, to Scotts Bluff county was, as a cosurety, entitled to contribution from the latter.

The controlling questions presented by the pleadings upon which the case was tried and determined in the district court, and which are now urged by the plaintiff on appeal, are: (1) Is the defendant a cosurety and liable for a contribution to the depositors' guaranty fund? (2) Is the plaintiff foreclosed by the first adjudication and do the principles of *res adjudicata* apply? Of course, if the first question be determined against the plaintiff, it would serve no good purpose to determine the second.

It is to be observed that the questions presented by this appeal arise from, and have their inception in, the operation of our state banking law. Comp. St. 1922, pt. 3, title V, art. XVII, as amended. They pertain particularly to the provisions thereof creating and regulating the operation of the "depositors' guaranty fund." Comp. St. 1922, secs. 8024-8035.

This legislation was enacted pursuant to the police power of the state and is sustainable as, and because of, being a proper exercise of that police power. *Noble State Bank v. Haskell*, 219 U. S. 104; *Shallenberger v. First State Bank*, 219 U. S. 114.

To epitomize briefly, it may be said that section 8024 *et seq.*, Comp. St. 1922, provides for the creation of a guaranty fund for the protection of depositors of a state bank; that when a state bank fails, the claims of depositors for lawful deposits, and the claims of holders of exchange, shall have priority over all other claims, except federal, state, county, and municipal taxes, and shall be a first lien on all of the assets of the failed banking corporation; and the

further provision is made that, when a bank has become insolvent and a receiver therefor has been appointed, it appearing that the cash in the hands of the receiver shall be insufficient to pay the claims of such depositors, the same shall be paid in a manner pointed out from the depositors' guaranty fund. The rights and remedies created in favor of the depositors' guaranty fund and for its reimbursement by reason of this transaction are enumerated in section 8035, Comp. St. 1922, in the following language: "To the extent of the amount paid from said guaranty fund to satisfy the claims of creditors, the department of trade and commerce, for the use and benefit of said fund, shall be subrogated to all the right of the creditors thus paid, to participate in the assets of such bank, and the same shall be enforced and collected by the receiver accordingly and when collected shall be placed in said fund and deposited by the department of trade and commerce in the solvent banks subject to the provisions of the depositors' guaranty fund, proportionate to the several deposits to the assessments levied against each of said banks."

It will be noted that by the language of the above section quoted the right of subrogation in favor of the depositors' guaranty fund is expressly confined to "all the right of the creditors thus paid, to participate in the assets of such bank." This language is plain and unambiguous. *State v. Insurance Co. of North America*, 71 Neb. 320.

If we are to be limited for our remedies to the provisions of the statute, it could hardly be contended that the surety bond executed by the bank and the defendant surety company in this case, and in possession of the county authority, which evidenced an express liability of both, formed any part of the "assets of such bank."

To what extent may the express provisions of this statute before us be enlarged by construction? The statute, itself, is not in any manner intended to be declaratory of common law. It must be deemed exclusively a police regulation having as its well-defined object the enforcement of primary conditions of successful commerce. For this pur-

pose new rights unknown to common law are created, for the enforcement of which express remedies are prescribed; and though new powers are brought into being, as to each, means are expressly provided by the terms of the statute itself to secure their due execution.

If we are correct in this deduction, it would follow that the proper canon of construction applicable and necessitated by the form and purpose and the language of the legislation before us is, *"Expressio unius est exclusio alterius."* It would follow that the provisions of section 8035, Comp. St. 1922, providing for subrogation by the depositors' guaranty fund to certain rights, must be deemed exclusive. 2 Lewis' Sutherland, Statutory Construction (2d ed.) secs. 493, 572, 627, 633; 36 Cyc. 1122.

This construction is also in accord with the plain words of the statute and in harmony with the views heretofore expressed by this court. *State v. Farmers State Bank,* 103 Neb. 194; *State v. Farmers State Bank,* 113 Neb. 503; *State v. Kilgore State Bank,* 112 Neb. 856. This principle of construction now under consideration was necessarily involved, and by implication approved, in the decision of this court in *State v. Kilgore State Bank, supra.* The controlling facts and circumstances of that case are substantially identical with the case before us. The United States Fidelity & Guaranty Company had executed a bond in behalf of the state bank, and the latter thereby secured certain Indian deposits made by the federal government. The bank failed. The surety company, in strict compliance with the provisions of its bond, paid the deposits to the assured. It thereupon claimed subrogation to the rights of the depositors as against the depositors' guaranty fund. The claim was resisted. Manifestly, if the depositors' guaranty fund was entitled to contribution on the theory of being a cosurety with the "surety bond," it would have been an existing defense *pro tanto* in its behalf. Or, if the equity of the depositors' guaranty fund was superior to that of the bond, it would have been a complete defense. In that action this court, notwithstanding the defense that was presented in

behalf of the depositors' guaranty fund, sustained the right of the insurance company to subrogation as against both the bank and the guaranty fund. In that opinion the following language was used and is applicable to the facts in the instant case:

"This brings us to the second inquiry. The contract was in suretyship. It was so denominated in the bond. The intervener signed as a surety. The requirement of the United States was a suretyship. The contract was not a policy of insurance whereby the company was to pay the United States without recourse. Appellees concede in their brief that the surety company has recourse upon the bank, having paid for the bank. How? Through subrogation to the right of the United States is the only possible way. And since the United States had in that very connection, as we have seen, a right of recourse to the guaranty fund, why should the right of subrogation be abridged in regard to that? Manifestly there is no reason why that should be, since no condition interposes to check the operation of the equitable doctrine of subrogation. The fact that the surety is paid will not do it. That fact does not destroy the inherent nature of suretyship, nor deprive it of its peculiar remedy, which is subrogation. Subrogation follows equity, and it is only where it will be inequitable to permit it to function where it ordinarily does function that its automatic operation is denied. The paid surety is as much entitled to subrogation as the unpaid surety unless some equity intervenes. It must be clear that the guaranty fund protection of the deposit which was to be made was in the contemplation of the parties when the surety company entered upon its suretyship. It was paid for that suretyship, but the terms, as to amount, were made upon the theory that the deposit carried the protection of the fund and that it, the surety, would stand in the shoes of the depositor."

This doctrine by fair implication is a denial of any right of contribution in favor of the guaranty fund as against the bond company, and is strictly consistent with section 8035, Comp. St. 1922.

But even if the statute involved is construed as not in any manner restrictive in and by its terms, is the plaintiff herein now entitled to relief against the bonding company in the form of contribution as between cosureties? The doctrine of contribution rests on the principle that, when the parties stand in *æquali jure,* the law requires equality, which is equity, and one of them shall not be obliged to bear a common burden in ease of the rest. It is founded on principles of equity and natural justice and does not arise from contract. The principle of equity on which the right of contribution is founded can apply only in cases where the situations of the parties are equal, for equality among persons whose situations are not equal is not equitable. Within the meaning of this rule, the situations of the parties are equal when the parties are under a common burden or liability, and it is immaterial whether that liability is joint or joint and several. 13 C. J. 821, sec. 2.

It is obvious that the obligation imposed upon the depositors' guaranty fund by the terms of the statute is quite different from that which the conditions of the bond impose upon the surety company in this case. The terms of the statute speak of a "guaranty fund." This fund briefly is not a party to the bank's contract, and is not precluded by the results of any legal action brought thereon. It only becomes liable after and when a state bank has failed which has complied with the conditions of the statute, a receiver has been appointed, and it has been determined that the cash on hand is insufficient to pay the bank's depositors and the holders of the bank's exchange.

The National Surety Company's liability, on the other hand, is in no manner dependent on the insolvency of its principal or of the condition of its assets, but wholly upon the "failure" of its principal to comply with the conditions of the bond which it executed with him. Whether its principal be solvent or insolvent, whether a bankrupt institution or a going concern, the conditions of that instrument which evidence its primary liability to the obligee alone determine its validity. It may be termed, therefore, strictly

a surety within the restricted meaning of that term. The liability of the guaranty fund is therefore not identical with that of the surety company. Neither can it be said that the burdens are common. While both as to the principal are collaterally liable, as to the creditor or obligee, the latter is primarily and directly liable on its contract from the beginning, whereas the liability of the guaranty fund is secondary and is fixed only by the happening of the prescribed statutory conditions. The surety company is bound with the principal on the identical contract under which the liability of the principal accrues. The guaranty fund is bound for the performance of a collateral contract on which the principal alone is obligated. The contract of the surety company is a direct, original agreement with Scotts Bluff county that the very thing contracted for shall be done, whereas the guaranty fund is bound by a statutory, cumulative, collateral obligation by which it, in effect, is bound that its principal is able to, and will, perform the contract, and that if the principal defaults the guaranty fund, after statutory steps have been taken, must pay to the extent provided by law. In short, the National Surety Company is the insurer of the debt or obligation evidenced by its bond, while the guaranty fund, as to deposits lawfully made, was the insurer of the ability or solvency of the bank.

In view of the statutory provision, the term "depositors' guaranty fund" is no misnomer and functions strictly as a "guarantor" as the nature of its obligations is strictly secondary. The obligation of the National Surety Company being strictly primary, it may properly be termed a "surety" in the technical sense of that term. This is in accord with the decisions of this court. *Mowery v. Mast & Co.,* 9 Neb. 445; *Barry v. Wachosky,* 57 Neb. 534; *Ayres v. West,* 86 Neb. 297; *Schultz v. Wise,* 93 Neb. 718; *Anderson v. Hall,* 4 Neb. (Unof.) 494.

If we are correct in this conclusion, it follows "as a general rule a guarantor is not in privity with sureties, even on the same obligation, and cannot, when he has paid the debt, claim contributions from such surety."

Or, as we find it stated in *Monson v. Drakeley*, 40 Conn. 552; "A guarantor of the ability of the maker is in no sense in privity with the sureties. His undertaking is collateral and independent. He is not chargeable by them with contribution and cannot claim it; and if he pays the debt his remedy is against the principal alone for indemnity."

As this case is presented in behalf of the plaintiff solely on the theory that the depositors' guaranty fund is entitled to contributions from defendant as between cosureties, it would seem that the above principle would be determinative of the controversy, and that such action cannot be sustained.

The judgment of the district court is right, and is

AFFIRMED.