SCHOOL DISTRICT OF OMAHA, IN THE COUNTY OF DOUGLAS, IN THE STATE OF NEBRASKA, APPELLEE, v. ERNEST A. ADAMS, TREASURER EX OFFICIO OF THE SCHOOL DISTRICT OF OMAHA ET AL., APPELLANTS.

39 N W. 2d 550

Filed November 10, 1949. No. 32648.

*Swarr, May, Royce, Smith & Story,* and *Robert K. Andersen,* for appellants.

*King & Haggart,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

This action sought a declaratory judgment construing and applying Chapter 297, Laws of Nebraska, 1947, now section 79-2715, R. S. Supp., 1947, with relation to the bond of the treasurer of the board of education for plaintiff district in Omaha, a city of the metropolitan class, which bond was theretofore duly executed in conformity with section 79-2715, R. S. 1943, prior to amendment of the latter section by the foregoing act.

After hearing upon the merits, the district court entered a decree finding and adjudging the issues generally for plaintiff and against defendants. The decree

found that section 79-2715, R. S. Supp., 1947, was retrospectively operative, thus applicable to the original bond, and empowered the board of education to require a reduction in the penalty thereof during the term for which the original bond was given. The decree ordered and adjudged that defendants should reduce the penalty of the original bond from $500,000 to $200,000, effective January 1, 1948, by execution of a rider to be attached and made a part thereof, and awarded plaintiff a money judgment against defendant Continental Casualty Company for $3,060, with interest from January 1, 1948, which sum represented the pro rata unearned premium upon the reduced penalty for the balance of the term.

Motion for new trial was overruled, and defendants appealed, assigning substantially that the judgment was contrary to law. We sustain the assignment.

There was no dispute about the facts. Defendant Ernest A. Adams, hereinafter generally designated treasurer, was duly elected and qualified as county treasurer of Douglas County for a term of four years, beginning January 9, 1947, the first Thursday after the first Tuesday in January next succeeding his election. Upon election as such, and subsequent qualification for the office, he was concededly ex officio treasurer of the board of education for plaintiff district, hereinafter generally designated as plaintiff. On January 9, 1947, in conformity with section 79-2715, R. S. 1943, and certain other statutes in pari materia therewith, the treasurer as principal, and defendant Continental Casualty Company, as surety, hereinafter generally designated as such, with approval of plaintiff's board of education, executed an official bond payable to plaintiff in the principal sum of $500,000, which bond was duly filed as required by law.

The bond specifically provided: "THE CONDITION OF THIS OBLIGATION IS SUCH, that WHEREAS, the above bounden, ERNEST A. ADAMS, has been elected to the office of TREASURER OF THE SCHOOL DISTRICT OF THE CITY OF OMAHA, in the County of

Douglas, in the State of Nebraska, *for a term of four years, commencing on the 9th day of JANUARY, A. D., 1947 and ending on the 4th day of JANUARY, A. D., 1951, or until his successor in office is duly elected and qualified.*

"NOW, THE CONDITION OF THE ABOVE OBLIGATION IS SUCH, that if the said ERNEST A. ADAMS shall render a true account of his office and of the duties therein to the proper authorities when required thereby or by law; and shall promptly pay over and deliver to the person or officers entitled thereto, all money and property which may come into his hands by virtue of his said office, and shall faithfully account for all balances of money remaining in his hands *at the termination of his office,* and shall hereafter exercise all reasonable diligence and care in the preservation and lawful disposal of all money, books, papers and securities or other property appertaining to his said office, and deliver them to his successor or to any person authorized to receive the same; and if he *shall faithfully and impartially discharge all other duties now or hereafter required of his office, by law; then this obligation shall be void, otherwise to be and remain in full force and effect."* (Italics supplied.)

In that connection, contrary to plaintiff's contention, any statutory requirement that the treasurer should give a bond would not be a duty of his office, but rather, as hereinafter observed, would be a required precedent element of qualification as distinguished from eligibility for the office in order to avoid a vacancy and permit him to legally hold the office and perform the duties thereof then or thereafter required by law. The conditions and obligations recited in the bond had reference solely to the duties of his office after qualification therefor by execution of the bond.

Concededly, the agreed annual premium charges for the bond were $2,000 for the first year, which sum plaintiff paid the surety when the bond was executed,

and three subsequent annual premiums amounting to
$6,000, which were a short time after execution paid in
full by plaintiff to the surety at a discount of 15 percent.
It will be noted that the term of the treasurer was four
years, as provided by statute, and that the term of the
bond was specifically for that period, or until his succes-
sor in office was duly elected and qualified for the office.

In that regard, the term of an official statutory bond is
not ordinarily measured by annual premium charges but
by the fixed term of the public office for which the bond
was given, or the term as specifically provided in the
bond itself. Jaeger Mfg. Co. v Massachusetts Bonding
& Ins. Co., 229 Iowa 158, 294 N. W. 268; 9 C. J., Bonds,
§§ 73 and 74, p. 44.

Fidelity & Deposit Co. v. Libby, 72 Neb. 850, 101 N. W.
994, relied upon by plaintiff, involved the bond of an
appointee whose term was not fixed by statute but revo-
cable at pleasure. Therein also neither the application for
the bond nor the bond itself recited any prospective term
of the principal's office or the term of the bond, but the
surety simply undertook therein to become and remain
bound only so long as the agreed annual premium should
be paid in advance. The opinion is therefore distinguish-
able both upon the law and the facts.

When the original bond was executed, section 79-2715,
R. S. 1943, insofar as important herein, provided: "He
shall give bond, payable to the board of education in an
amount equal to the sum that may be in his possession
at any one time of moneys belonging to or under the
control of the board of education, but such sum shall not
be less than the maximum sum that may be in his posses-
sion at any time of moneys belonging to or under the
control of the board of education, and the bond shall be
signed by one or more surety companies of recognized
responsibility. The cost of the bond shall be paid by the
school district."·

The foregoing section, as amended by what is now
section 79-2715, R. S. Supp., 1947, was approved May

24, 1947, and became effective 90 days thereafter. The amendment imposed new duties upon the treasurer of the same general character as those theretofore imposed, and insofar as important here, provided: "He shall give bond, payable to the board of education in such amount as may be required of him by the board of education, in no event to be less than two hundred thousand dollars, * * *. Such bond shall be signed by one or more surety companies of recognized responsibility, to be approved by the board of education. The cost of the bond shall be paid by the school district. Such bond may be enlarged at any time the board of education may deem an enlargement or additional bond necessary."

It will be observed that the original bond was comprehensive of both the foregoing sections.

On October 20, 1947, assuming and contending that the statute as amended was operative retrospectively and by its terms and provisions gave it power and authority to do so, plaintiff's board of education adopted a resolution, the effect of which was to request that defendants submit for its approval a new bond in the reduced penal sum of $200,000, found by it to be sufficient, conditioned therein according to the statute as amended, which new bond upon approval thereof should be substituted for the original theretofore in force and effect, and that said original bond should then be cancelled.

On October 22, 1947, the attorney for the board of education wrote a letter to the local agent for defendant surety, referring to the resolution and requesting such agent to ascertain the rate on such a new bond to be thus substituted and the pro rata amount of the unearned premium that would be due and payable to plaintiff on cancellation of the original, insofar as it affected future defaults. It also suggested that if a reduction in the penal amount of the original bond by its amendment, to include the reduced penalty and the purportedly new statutory duties imposed upon the treasurer would effect the same

saving to the school district, then that procedure would be satisfactory.

Defendants refused to comply with the request to reduce the penalty of the original bond, either by substitution of a new bond and cancellation of the original, or by amendment of the original. This was done upon the premise that the statute as amended was operative only prospectively, and that neither its provisions nor the provisions of any other statute gave the board of education any retrospective authority, actual or implied, to reduce the penalty or cancel the original bond or release and discharge the surety before final termination of the contractual term, and that to hold otherwise would contravene Article I, section 10, Constitution of the United States, and Article I, section 16, Constitution of Nebraska, by impairing the obligation of contract.

Defendants also refused to incorporate in the original bond, by amendment or otherwise, as conditions or obligations thereof, the new duties set forth in the amended statute, upon the premise that the provisions of the original bond were all inclusive thereof, not only by virtue of controlling applicable law but also because of the general and specific language appearing therein, particularly that part requiring the treasurer to "faithfully and impartially discharge all other duties now or hereafter required of his office, by law; * * *."

In the light of the foregoing, the surety also refused to refund plaintiff $3,060 premiums already paid on the original bond for the full four-year term, which sum represented the pro rata portion of the unearned premium on the bond at the reduced penalty rate from January 1, 1948, to the end of the term.

No accounting was ever had by or demanded of the treasurer and the bank balance, representing moneys belonging to or under the control of the board of education, was $526,546.25 for October 1947. Thereafter, throughout 1947 and 1948, such balances were substantially larger for several months, and they were never

less than $318,454.96. During August, September, and October of 1948, they substantially exceeded a million dollars each month. In that regard, it must be borne in mind that a statutory official bond covers not only loss of public funds but also the faithful performance of all the duties imposed upon the officer by law. Liability for the latter may far exceed the former. Contrary to plaintiff's contention, the fact that bank deposits are or may be protected by a depository law is of no consequence in a determination of the issues presented.

The issues in this case are to be decided upon the basis of what the Legislature did do and not what it could have done. As we view it, this court is simply required to interpret and apply a clear and unambiguous statute.

Concededly, the Legislature by amendment imposed new duties of the same general character upon the office of the treasurer, to be performed in the future, and thereby included new conditions and obligations in the original bond itself, not only by virtue of the general language but by specific language used therein, as well as upon legal principles. See Stearns on Suretyship (2d ed.), § 152, p. 253. The trial court evidently took that view, and since no complaint is made here upon that question, it does not require further discussion.

Concededly also, the amendment gave plaintiff the prospective right and power to enlarge the penalty or require an additional cumulative bond at any time the board of education deemed it necessary to protect the public. However, plaintiff made no such demands. Rather, without attacking the sufficiency of either the penalty, the surety, or the validity of the original bond, plaintiff claimed the restrospective right, power, and authority under the statute as amended to change or modify the original bond during its term, by reducing the penalty, thereby pro rata releasing and discharging the surety from its liability upon the original for the balance of the term, and recover back pro rata the unearned premium for that period in order solely to effect a saving

for plaintiff. Defendants contended that the statute, as amended, gave the plaintiff no such authority. We sustain that contention.

Plaintiff relies upon a statement appearing in 46 C. J., Officers, § 94, p. 962, reciting what the Legislature had the power to do with relation to official bonds. Ex parte Buckley, 53 Ala. 42, the only supporting case cited in the note, involved a statute specifying the qualification of sureties on official bonds, which qualifications had not theretofore been specifically defined, and provided a comprehensive remedy by which freeholders could test the sufficiency of such sureties. In the opinion the court did use tutorial language with relation to what the Legislature could do, but in finally deciding what the Legislature did do, as we must in the case at bar, it was said: "This statute impairs no vested right, creates no new obligation, imposes no new duty, attaches no new disability, in respect to a past transaction, or arising out of a past consideration. It simply provides a remedy to secure the performance of a pre-existing duty. The officers nominated in it were under the obligation of executing an official bond with sufficient sureties. This duty is not enlarged—it remains as declared by existing law. Neither the penalty, condition, nor obligation of the bond, is altered. * * * The whole field of operation of the statute is the future." In the light of the circumstances presented here, and the provisions of the statute involved, that opinion lends no support to plaintiff's contentions.

It should be pointed out that a board of education is a creature of statute, and as such possesses no other powers than those expressly granted by the Legislature. Schulz v. Dixon County, 134 Neb. 549, 279 N. W. 179, 119 A. L. R. 1294; American Surety Co. v. School District, 117 Neb. 6, 219 N. W. 583.

In that regard, plaintiff relied in part upon section 79-2704, R. S. 1943, which provides: "The affairs of the school district created by this act shall be conducted exclusively by the board of education, *except as otherwise*

*provided by this act."* (Italics supplied.) Evidently, however, plaintiff overlooked the exception provided therein, which has application here.

Plaintiff also relies in part upon Gaddis v. School District, 92 Neb. 701, 139 N. W. 280, which is clearly distinguishable both upon the law and the facts. That opinion involved the powers of the board of education "to select school sites and erect school buildings," with "money derived from taxation," in the light not only of section 79-2704, R. S. 1943, but also other sections of the statute which specifically gave the board of education the power to purchase, hold, and sell personal and real estate and granted such board " 'exclusive control of the same (all property of the district) for all purposes herein contemplated.' "

Section 79-2715, R. S. 1943, simply required that the treasurer should give a bond payable to the board of education in a factually determinable amount, signed by one or more surety companies of recognized responsibility. The treasurer tendered such a bond, containing appropriate conditions and obligations, which was approved by the board of education on January 6, 1947, and filed as required by law on January 9, 1947, as a necessary prerequisite qualification for the office. See Chapter 11, p. 370, R. S. 1943, and the 1947 Supplement thereto.

To discuss the separate applicable sections of the aforecited statutes would serve no purpose. It is sufficient for us to say they provide that a school district treasurer, as an officer specifically enumerated, and as any person elected or appointed to any office requiring a bond, must qualify for the office by filing a bond within the time required by law, or "his office shall thereupon ipso facto become vacant." §§ 11-101, 11-103, 11-105, 11-107, and 11-115, R. S. 1943, and § 11-119, R. S. Supp., 1947. See, also, section 79-404, R. S. 1943, as bearing upon the intent of the Legislature with reference to qualifications for the office of school district treasurers by filing a bond.

The requirement that a school district treasurer shall

furnish and file a bond could not be said to be a mere administrative duty of the office, as argued by plaintiff. It is not the board of education but the statutes which require a bond and fix the school district treasurer's manner of qualification for the office. No authority cited by plaintiff holds otherwise, under statutes similar to our own.

In that regard, Frans v. Young, 30 Neb. 360, 46 N. W. 528, 27 Am. S. R. 412, relied upon by plaintiff, involved simply the question of whether or not a school district moderator was required by statute to take an oath and file a written acceptance as a qualification for the office. When read in its true light, that opinion is authority for the conclusion that unless an elected school district treasurer files a qualifying bond as required by law, his office ipso facto becomes vacant.

It is well established in this jurisdiction that a legislative act will operate only prospectively and not retrospectively, unless the legislative intent and purpose that it should operate retrospectively is clearly disclosed. War Finance Corporation v. Thornton, 118 Neb. 797, 226 N. W. 454; Tynon v. Bliss, 121 Neb. 80, 236 N. W. 184. See, also, 59 C. J., Statutes, § 692, p. 1159; 50 Am. Jur., Statutes, § 478, p. 494. Neither the original statute, nor the statute as amended, nor the title thereof, nor any other related statute, contains any provision, express or implied, from which this court could conclude that the Legislature intended the amendment to operate retrospectively, thereby permitting plaintiff to reduce the penalty and modify or cancel the original bond, or release and discharge the surety pro rata prior to completion of the treasurer's four-year term. We conclude that the statute as amended operated only prospectively.

The general rule applicable here is that, in the absence of express statutory authority, no public official or governing body has the right, power, or authority to cancel, substitute, change, or modify an existing official statutory bond, or to release and discharge the surety thereon

prior to termination of the trust of the office or the term for which it was given. As stated in 46 C. J., Officers, § 414, p. 1074: "An official bond is not satisfied by its cancellation by an unauthorized officer; and as the officer to whom a bond is given takes no beneficial interest but only a legal interest, he may not, except as prescribed by law, release or discharge the obligation of an official bond." See, also, Stearns on Suretyship (2d ed.), § 151, p. 252; Lawrence v. American Surety Co., 263 Mich. 586, 249 N. W. 3, 88 A. L. R. 535; Fidelity & Deposit Co. v. Fleming, 132 N. C. 332, 43 S. E. 899; Aetna Casualty Co. v. Board of Supervisors, 160 Va. 11, 168 S. E. 617; Fidelity & Deposit Co. v. Callahan, 98 Kan. 547, 158 P. 658; Sullivan v. State ex rel. Langsdale, 121 Ind. 342, 23 N. E. 150.

Also, in that connection, a statute simply granting an official or governing body prospective authority to exercise a limited discretion and thereby fix the amount of the penalty and approve an official statutory bond does not by implication authorize such official or body to modify or cancel a theretofore validly executed bond or to reduce the penalty and pro rata or otherwise release and discharge the surety prior to its termination. Sullivan v. State ex rel. Langsdale, *supra;* Fidelity & Deposit Co. v. Callahan, *supra;* Fidelity & Deposit Co. v. Fleming, *supra;* First Nat. Bank v. Moon, 243 Mich. 124, 219 N. W. 625.

By analogy, neither would incorporation of a statutory provision prospectively authorizing such official or body to enlarge the penalty of an existing bond or to require an additional bond cumulative in character, which statute omitted any reference to authority to make a reduction of the penalty after it had been theretofore fixed as required by statute, give any implied authority to do so.

Under the circumstances presented here, both of the foregoing propositions of law clearly come within and are controlled primarily by the maxim, expressio unius est exclusio alterius, which, when operative in the law

as an aid in the determination of legislative intent with reference to statutory grants of power, means that where a statute enumerates the things upon which it is to operate, or forbids certain things, it is to be construed as excluding from its effect all those not expressly mentioned, unless the Legislature has plainly indicated a contrary purpose or intention. 59 C. J., Statutes, § 582, p. 984; 50 Am. Jur., Statutes, § 244, p. 238, § 429, p. 450; Rogers v. National Surety Co., 116 Neb. 170, 216 N. W. 182.

Since we have decided that the section as amended was intended to operate and did operate prospectively only, no constitutional question is involved, and it will not be discussed.

We conclude that the decree of the trial court was contrary to law, and for the reasons heretofore stated, the judgment should be and hereby is reversed and the action is dismissed.

REVERSED AND DISMISSED.