HENRY CREAGER v. SCHOOL DISTRICT NUMBER NINE OF THE TOWNSHIP OF WRIGHT.

*Line fence around school house site—A "necessary appendage" within the meaning of the statute—Where electors direct district board to build such a fence—And board estimates its cost, but takes no further action in the matter—And the director, without the knowledge of his co-members, lets the contract according to such specifications—And after the contractor has his material on the ground, the assessor notifies him that he had better have an understanding with the district board or he may have trouble in getting his pay—But he is not forbidden to build the fence— Which he constructs according to contract—Which fence is not accepted by the board—And acceptance is refused at a special meeting of the electors—And the moderator refuses to countersign an order for the contract price—Which is lost, and suit brought against the district—Held, that the director had a right to let the contract in the manner stated—"Appendages," under the school statutes, includes fuel, fences, and necessary out-houses—Duty of director to provide same not confined to school term—They should be on hand when school opens—It then becomes his duty to keep same in repair, as also the school-house—If mandamus was plaintiff's appropriate remedy, defendant is estopped from raising the objection for the first time in the appellate Court.*

1. Pending the erection of a school-house, the electors of the district voted to build a *line* fence around the school-house site, specifying the plan and manner of its erection, and directed the district board to build the same. The board estimated the cost of the fence, but

took no action with reference to letting the contract, or any steps towards its construction; and the moderator and assessor left the board meeting, with the understanding that the board would meet in the near future and let *that* and *other* jobs. Soon after *this* meeting, the director, assuming to act in behalf of the district, contracted for the construction of the fence. according to the specifications adopted by the electors. The other members of the district board were ignorant of this action until after the contractor had procured material and dug the post-holes, when the assessor notified him "that he had better have an understanding with the school board, or he might not get his pay;" but he was not forbidden to build the fence, which he completed according to agreement. The school board never accepted the fence, and at a special meeting of the electors they refused to accept or pay for it. No school was being taught at the time of the making or completion of the contract.

*Held,* that the fence was a necessary appendage to the school house, and that the director had the right to let the contract for building the same *in the manner stated.*

2. A *line* fence around a school-house site falls within the same category as a well, wood-house, or privy, and is a necessary appendage to the building. While not an annexation, it is certainly accessory thereto.

3. The word "appendage," as used in our. school statutes, does not mean simply the school apparatus to be used *inside* of the building, nor is it limited to brooms, pails, cups, etc., but must be construed to include fuel, fences, and necessary out-houses.

4. Under How. Stat. § 5073 (subdiv. 6), .the *power* and *duty* of the director to provide the necessary appendages for the school-house is not confined to the *actual* sessions of the school, as nearly all such appendages ought to be on hand when the school opens, and should be furnished or built beforehand; and it *then* becomes the duty of the director to keep them, with the *building,* in good condition and repair during the time school shall be taught therein.

5. Where a contractor received an order from the director of a school district in payment for building a school-house fence, which the moderator refused to countersign, and the order was lost, and an action of assumpsit was brought against the district and tried in justice's and circuit courts without any objection by the defendant that *mandamus* was the appropriate remedy,—

*Held,* that such claim, even though it might have been a good defense if seasonably made, will not be considered for the *first* time in the Supreme Court.

Error to Ottawa. (Arnold, J.) Argued May 12, 1886. Decided June 24, 1886.

Assumpsit. Plaintiff brings error. Reversed, and judgment entered for amount of plaintiff's claim, with interest from commencement of suit and costs of all the courts. The facts are stated in the opinion, and in head-note 1.

*George A. Farr* and *Arthur Lowell,* for appellant:

Defendant, like all other corporations, can contract only by such agents or officers as have express or implied authority given them by its charter: *Lockwood v. Thunder Bay River Boom Co.,* 42 Mich. 536.

By statute it is made the duty of the director to provide the necessary appendages for the school-house, and keep them and the building in good repair: How. Stat. § 5073 (subdiv. 6); *School Dist. No. 4 v. Snell,* 24 Mich. 350; *McLaren v. Town Board of Akron,* 48 Id. 189.

This duty he must perform, and neglect so to do is ground for his removal: *Town Board of Hamtramck v. Holihan,* 46 Mich. 127.

As to what are "school-house appendages," see *School Dist. v. Wolfrom,* 25 Wis. 468; *Lilburn v. School Dist.,* 26 Id. 585; *Hemme v. School Dist.,* 30 Kan. 377.

*V. W. Seely,* for defendant:

Defendant is a municipal corporation, and can act only in the manner provided by law. It has reserved unto itself certain prerogatives which it cannot delegate except as provided in its charter, among which is the right to determine its necessities, the extent of its improvements, and the amount of its expenditures: How. Stat. §§ 5052 (subdiv. 6, 7), 5103.

Coupled with these prerogatives are certain other enumerated powers conferred by statute; such as the election of officers, directing the building of school-houses, etc., the raising of the necessary tax to keep the buildings in repair and to provide the necessary appendages thereto: How. Stat. § 5052 (subdiv. 7).

These powers cannot be delegated: *Nevil v. Clifford,* 63 Wis. 435, and cases cited; *School Dist. v. Stough,* 4 Neb. 357; *Gehling v. School Dist.,* 10 Id. 239; Dillon's Munic. Corp. (3d ed.) §§ 96, 779; *Harris v. School Dist.,* 28 N. H. 58.

For the purpose of carrying out these provisions when acted upon by the district, their further management is intrusted to the district board or duly appointed committee, whose powers are circumscribed and well defined: *Hinman*

*v. School Dist.*, 4 Mich; 168 ; *Union School v. First Nat. Bank of Crawfordsville*, 102 Ind. 464.

In this case the district voted the necessary tax to build the proposed fence, and directed the district board to let the contract for its construction, which duty the board never performed. *School Dist. v. Perkins*, 21 Kan. 536.

The district board can act only by vote at a meeting of that body, and no individual member can contract so as to bind the district unless specially authorized so to do ; How. Stat. § 5058 ; *Taymouth v. Koehler*, 35 Mich. 26 ; *Hazen v. Lerche*, 47 Id. 626 ; *U. B. Church v. Vandusen*, 37 Wis. 54 ; *People v. Peters*, 4 Neb. 254 ; *Jordan v. School Dist.*, 38 Me. 164 ; *Curtis v. Portland*, 59 Id. 483 ; *Damon v. Granby*, 2 Pick. 345 ; *Doyle v. Gill*, 59 Wis. 518 ; *Mills v. Collins*, 67 Iowa, 164 ; *St. Patrick's Church v. Gavalon*, 82 Ill. 170 ; *Kingsbury v. School Dist.*, 12 Metc. 99 ; *Keyser v. School Dist.*, 35 N. H. 477 ; *Martin v. Lemon*, 26 Conn. 192.

The power vested in the director by How. Stat. § 5073 (subdiv. 6), is not absolute, and cannot be superior to that vested in the district : *Kane v. School Dist.*, 52 Wis. 502 ; *Nevil v. Clifford*, 63 Id. 435.

The contract made by the director was unauthorized, and created no liability against the district : *School Dist. v. Perkins*, 21 Kan. 536 ; *School Dist. v. Snell*, 24 Mich. 350 ; *Gibson v. School Dist.*, 36 Id. 405 ; *Taymouth v. Koehler*, 35 Id. 26.

The plaintiff contracted with the director at his peril : *School Dist. v. Perkins*, 21 Kan. 536 ; *Union School Dist. v. First Nat. Bank of Crawfordsville*, 102 Ind. 464 ; *Beard v. DeGoit*, 58 Mich. 245 ; *Hannah v. Fife*, 27 Id. 172 ; *People v. Treasurer of Baraga Township*, 39 Id. 554 ; Dillon's Munic. Corp. § 447 (note).

There has been no ratification of the act of the director, the fact that the fence stands on the premises not amounting to such : Dillon's Munic. Corp. § 464 (note) ; *Pratt v. Swanton*, 15 Vt. 147 ; *Davis v. School Dist.*, 24 Me. 349 ; *Jordan v. School Dist.*, 38 Id. 164.

If the director had the power to make the contract under the facts in this case, *mandamus* is the proper remedy : *Wall v. Eastman*, 1 Mich. 268 ; *Town. of Marathon v. Oregon*, 8 Id. 372 ; *Town of Dayton v. Rounds*, 27 Id. 82 ; *McArthur v. Duncan*, 34 Id. 27 ; *Burns v. Bender*, 36 Id. 195 ; *Just v. Wise*, 42 Id. 573 ; *School Dist. v. School Dist.*, 3 Wis. 333 ; *Percival v. Studheit*, 11 Neb. 359.

MORSE, J.   The plaintiff brought suit in justice's court to recover the contract price for building a fence around defendant's school site, and recovered a judgment of $30, and costs.

Upon appeal to the circuit court for Ottawa county, and trial before Hon. Dan. J. Arnold, circuit judge, without a jury, the defendant had judgment.

The plaintiff brings error to this Court, and insists that the finding of facts does not support the judgment, and asks that judgment be entered here for the plaintiff for the same amount rendered by the justice, that being the sum agreed upon in the contract hereinafter mentioned.

The facts are substantially as follows:

A school-house was being erected upon the school site in October, 1884, to be completed in December of the same year.   On the fourth day of October, 1884, at a special meeting of the electors of the school district, legally held, it was voted to build a line fence around said site; the kind of fence, and the manner of its erection, being specified.   It was also ordered at said meeting that the district board build or cause such fence to be built.

Soon afterwards the district board met, all being present, and estimated the cost of the fence at $32.   No action was taken, however, in reference to letting the job of building the same, or any steps taken towards building it.   Besides the building of this fence, there were other contracts to let, such as building a wood-shed and moving privies.   The officers at *this* meeting had some talk about letting these jobs, and the moderator told the director to negotiate with parties for doing these jobs.   The assessor did not hear this, however, and both he and the moderator left the meeting, understanding that the school board would meet again in the near future to let these several contracts.

Soon after *this* meeting, the director, assuming to act in behalf of the district, made an agreement with the plaintiff to build this fence according to the specifications as voted, for the sum of $30.   The other members of the board did

not know of the making of this contract at the time it was made, and never either authorized or ratified it.

After the plaintiff had procured the materials for the fence, and placed the same upon the ground, and dug the post-holes, he was notified by the assessor that he had better have an understanding with the school board, or he might not get his pay.

The plaintiff completed the job in accordance with the agreement, and the director drew an order upon the assessor for $30, and delivered it to the plaintiff. He presented it to the moderator, who refused to countersign it. The plaintiff subsequently lost the order.

Neither the moderator nor assessor knew that the director intended to let the contract for building the fence until it was in progress of erection. The school board never accepted the fence as built.

The matter was brought up at a special meeting of the district electors, who refused to accept the fence or pay for it. No school was being taught at the time the fence was contracted for, or at the time it was completed. The school-house was finished about December 10, 1884. The evidence fails to show how long after the house was completed before a school was taught therein.

The plaintiff claims that this fence is a necessary appendage to the school-house, and that, under the statute, the director had the power and authority to let the contract.

The circuit judge thought that the school board only had the power to make such a contract, and, as neither it nor the school district had accepted the fence, or ratified in any way the director's contract, ruled that the plaintiff could not recover.

There is no dispute but the fence was built just as the district wanted it, and for a less price than the board estimated it would cost to erect it. The plaintiff was not forbidden to build it. The assessor and the moderator, and presumably most of the district, knew that he was building it, and said nothing, except the remark of the assessor that he better have an understanding with the board, or he might not get

his pay. This might have been taken by the plaintiff as relating simply to the price of his work. He was not informed, in any manner, by these officers, that the director had no power to make the contract, but that the board alone could let the job or authorize the work.

It does not appear that the fence has been removed by anybody, or that the district is unwilling to enjoy the benefits of plaintiff's money and labor invested in the fence. The defense to his claim is purely technical. There is nothing either to show that the director did not act in good faith believing he had the power, or that the assessor or moderator called his attention to his want of authority until after the work was done.

There is no equity in the refusal of the district to pay plaintiff, nor do I think its action can be sustained by the law of the case.

It appears that the building of this fence was provided for by the electors of the district, and it is not claimed that anything further was necessary to be done by the voters of the school district.

The only question is whether the officers of the district, acting as a board, should let the contract for this work, or whether the director alone had authority, by virtue of his office, under the statute, to provide for the building of the fence.

I find no authority conferred upon the district board, by the statutes, specifically to purchase the necessary appendages or school apparatus for the school-house; nor is the subject of a fence, wood-shed, well, or privy mentioned anywhere in the school laws. But the sixth subdivision of section 5075 of Howell's Statutes authorizes the director "to provide the necessary appendages for the school-house, and keep the same in good condition and repair during the time school shall be taught therein."

Is a fence a necessary appendage for the school-house under this statute? We think the fence, *at least in this case*, was a necessary appendage to this school-house. It was a line fence, and therefore presumably necessary to be built.

It comes within the same category as a well, wood-house, or a privy, and has been held a necessary appendage in *Hemme v. School District*, 30 Kan. 377. While it is not an annexation to the school-house, it can certainly be considered an accessory to it.

The word "appendage," as used in our school statutes, does not mean simply the school apparatus to be used inside the building; nor do I think it can be limited to such articles as brooms, pails, cups, etc., but must be construed in a broader sense, as it has in other courts, to include fuel, fences, and necessary out-houses.

Subdivision 7 of section 5052 of Howell's Statutes authorizes the electors of the school district to impose a tax to keep the school-house in repair, and to provide the necessary appendages and school apparatus; limiting said tax, however, so that it "shall not exceed one-half the amount which the district is authorized to raise for building school-houses."

If the items of fuel, fences, wells, and out-houses do not come properly within the term "appendages," then the district has no power, under the statute, to impose a tax to purchase or erect them.

It is claimed, under the statute last referred to by defendant's counsel, that to give the director power to contract for the construction of a fence would give him authority greater than the electors of the district have, as they are limited in such expenditures, while his discretion would be absolute. This argument cannot avail in the present case, as the district distinctly authorized the erection of the fence as it was built, and the expenditure was within the limit. We do not wish to be understood as deciding that the director would, in all cases, be authorized to provide a fence, or to build it as he chose, without the assent or direction of the district.

What we hold is *this*: the district is authorized to vote a tax to build a necessary appendage for a school-house. In this case the fence was a necessary appendage. The district voted that it should be erected, and specified the manner in which it should be built, and the materials of which it should be composed. There is no provision of the statute conferring upon

the district officers, as a board, any authority to build a fence or provide necessary appendages; but the director is given the power to provide such appendages, and it is made his duty to do so; and we think he had a right to let the contract for this fence, and the district is liable for it.

It is further contended by the counsel for the defendant that, even if this fence can be considered a " necessary appendage," the power of the director to build it is confined by the statute to such time as school is being taught in the school-house.  There is no good reason for such a construction of the statute, as nearly all the things to be provided by the director ought to be on hand when school opens, and should be furnished or built beforehand. The comma in the statute correctly signifies the meaning of the clause.  As it reads, there is no restriction upon the time of providing the appendages, but his duty to keep them, with the school-house, in good condition and repair, is confined to during the time " school shall be taught therein."

It is further urged, against the plaintiff's right to recover, that he has mistaken his remedy; that he should have proceeded by *mandamus* to compel the moderator to countersign his order and the assessor to pay it..

This question is raised, as appears by the record, for the first time in this Court.   It is too late now to interpose this obstacle in the plaintiff's way.  He had judgment in justice's court, and the defendant appealed to the circuit, where the case was tried and disposed of upon the theory that the director had no authority to make the contract.   The defendant's brief shows that this idea came after it was printed, and no mention of this defense is made in plaintiff's brief; his counsel not being present at the oral argument.

The defendant having defended in this action, without demurrer or protest as to the right of the plaintiff to proceed in assumpsit, it cannot now take advantage of this claim, even though it might have been a good defense if raised in time.

The judgment below is reversed, and judgment will be entered here for the plaintiff for the sum of $30, and inter-

est from the commencement of suit, amounting, principal and interest, at this date, to $31, with costs of all three courts.

CAMPBELL, C. J., and SHERWOOD, J., concurred. CHAMPLIN, J., concurred in the result.