(No. 12178.—Decree affirmed.)

FRITZ REIGER *et al.* Appellants, *vs.* THE BOARD OF EDUCA-
TION OF SPRINGFIELD SCHOOL DISTRICT No. 186 *et al.*
Appellees.

*Opinion filed April 15, 1919.*

1. SCHOOLS—*school grounds purchased by board of education
need not be contiguous to school house site.* Clause 5.of section 127
of the School law, authorizing the board of education to acquire
necessary school grounds by purchase or condemnation, does not
require that such grounds shall all be contiguous to the school
house site or be purchased in connection therewith.

2. SAME—*all school taxes are levied "for educational purposes"
or "for building purposes."* All school taxes are levied under the
terms "for educational purposes" or "for building purposes," and all
payments must be made from one or the other of these two funds.

3. SAME—*when school grounds may be paid for without issuing
bonds.* The provisions of the School law giving boards of edu-
cation and directors the power to borrow money and issue bonds
for buying school house sites and building school houses do not
limit the power of such boards to levy taxes to pay for necessary
grounds to be used in connection with building sites when the same
may be paid for by proper levies of taxes without making a debt.

4. SAME—*purchase of land subject to vendor's lien is not a pur-
chase on credit.* A purchase of land by a board of education sub-
ject to a vendor's lien is not a purchase on credit, and the board
has power to levy taxes to discharge such lien.

5. SAME—*board of education is authorized to receive donations.*
Under section 39 of the School law a board of education is author-
ized to receive donations of land for school purposes.

6. SAME—*a board of education may purchase land for school
playground.* A board of.education has power, under the general
School law, to purchase necessary grounds for a school playground
and pay for the same by a tax levied for building purposes, regard-
less of the question whether such power is also given by the act
of June 23, 1915, (Laws of 1915, p. 640,) relating to the acquiring
of property by condemnation.

APPEAL from the Circuit Court of Sangamon county;
the Hon. E. S. SMITH, Judge, presiding.

B. D. MONROE, for appellants.

M. U. WOODRUFF, and B. L. CATRON, for appellees.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

On July 20, 1917, George Pasfield, Jr., trustee under the will of George Pasfield, deceased, conveyed by warranty deed to William L. Patton certain real estate in the city of Springfield for the consideration of $40,000. He reserved a vendor's lien on said premises to secure the payment of six promissory notes, one of which for $2500 was due on October 1, 1917, the other five each being for $5000, due, respectively, April 1, 1918, April 1, 1919, April 1, 1920, April 1, 1921, and April 1, 1922, with interest on all of said notes at five per cent. On July 24, 1917, said William L. Patton and his wife by warranty deed conveyed the said premises to the Board of Education of Springfield School District No. 186 for the express consideration of one dollar and other good considerations, and for the express purpose of establishing play and recreation grounds and athletic fields thereon for the school children of said district. The deed recited that it was subject to the vendor's lien for $27,500, evidenced by the six promissory notes aforesaid. The board of education accepted said deed subject to the vendor's lien by passing a resolution to that effect. Possession of said premises was taken by the board of education, and it proceeded to erect improvements thereon necessary to convert the premises into recreation grounds and athletic fields. On October 2, 1917, the board issued a warrant payable to Pasfield for the sum of $2523.90, being the amount due for principal and interest on said $2500 note, and the warrant was issued against taxes levied for building purposes and for the purpose of paying the note. Patton did not pay or promise to pay $40,000 for the said premises, or any consideration other than the amount of $27,500 provided for in said notes, and no part

of the premises was intended by him as a donation or a gift to the board of education. The premises were situated a block and a half from any school house or school house site, with two public streets of the city between the premises and the nearest school house, and were not acquired for a school house site. Springfield School District No. 186 includes the city of Springfield and certain territory adjacent thereto in Sangamon county and exists by virtue of a special charter, is subject to the general school laws of this State and is governed by a board of education of seven members duly elected, qualified and acting as such, and is invested with powers provided by the general school laws of this State.

On October 12, 1917, appellants and E. O. Bailey filed a bill of complaint in the circuit court of Sangamon county alleging substantially the foregoing facts, and further alleging that said board of education intends to equip, maintain and operate play and recreation grounds and athletic fields on said real estate and to pay for the same out of the school funds belonging to the district; that the action of the board of education in purchasing said premises, accepting the deed therefor, using the funds of the school district for paying for and improving the same, and the issuing of said warrant, is illegal and void, and the board has no power and is not authorized by law to purchase the premises for said purpose. The bill prays that the board of education and others be perpetually enjoined and restrained from paying said warrant and from paying for said premises, and that the deed to the board of education be canceled, etc. The members of the board of education, including its president, its secretary and treasurer, and William L. Patton, Ellen J. Patton and George Pasfield, Jr., were made parties defendant. Appellees, defendants named in the bill, filed a general demurrer, which was sustained by the court, and a decree was entered dismissing the bill for want of equity. All of the complainants ex-

cept E. O. Bailey, and who are residents, property owners and tax-payers of said school district, have prayed and perfected an appeal to this court.

It is the contention of both parties to this suit that by section 354*a* of chapter 122 (Hurd's Stat.. 1917, p. 2710,) the board of education of said Springfield school district is vested with all the powers of trustees of schools in school townships, with all the powers of school directors and with all the powers of boards of education, under the general school laws of the State; that by section 127 of the same statute boards of education under the general school laws are vested with all the powers of school directors, and are given, in addition thereto, the power and duty, "Fifth, to buy or lease sites for school houses with the necessary grounds," etc. Appellants do not contend that grounds for playgrounds and athletic sports are not "necessary grounds" within the meaning of said last section, but their contention is that the power conferred to acquire "necessary grounds" can only be exercised in connection with the buying or leasing of "sites for school houses," and that the "necessary grounds" must be connected with and a part of the school site and actually contiguous to the same.

Under clause 5 of section 127 a board of education may, without a vote of the people, acquire additional land by purchase or condemnation, whenever in its judgment such additional land is necessary for the proper conduct of the school, if a school site has already been selected and is occupied by a school building in use for school purposes. (*Trustees of Schools* v. *McMahon,* 265 Ill. 83.) Under the allegations of this bill the necessity and propriety of the school board to purchase additional school grounds for its school or schools are unquestioned. It could not very well be contended that a modern public school of the character described in the bill, in a city of the size of Springfield, ought not to have suitable playgrounds and athletic fields for pupils. Such a necessity is now generally rec-

287 – 38

ognized by all school authorities in order to obtain the best mental training and development. The lot in question acquired by the board, by reason of its size, being 320 feet (or one block) in width and one and one-half block in length, appears to be very suitable for playgrounds and athletic fields, and, so far as this record shows, its location does not argue against its fitness for such purposes. There is no allegation in the bill tending to show that it is possible to acquire suitable grounds for said purposes that are contiguous to a school house site. It is said in the argument of appellees that the school district maintains about twenty schools, including the senior and junior high schools, and this is not disputed by any of the allegations in the bill or by any argument of appellants. It is very manifest, therefore, that it would be at very great cost if the district should purchase for every school house site separate grounds for playgrounds and athletic fields. It is apparent from the argument that the grounds in question are very near to at least two school house sites, and no very serious objection can be raised against the site in question because it is distant from one school house site one block and is separated therefrom by two streets, particularly where it does not appear that suitable grounds could be obtained adjoining said school house site. We cannot agree that a reasonable construction of clause 5 of section 127 requires that necessary school grounds shall be purchased in connection with the purchase of a school site or that such necessary grounds must be contiguous to a school house site already purchased. It is very easy to conceive of a situation where it would not be possible to acquire additional necessary school grounds contiguous to a site already purchased by reason of the surrounding property being held by other property owners and not obtainable at a reasonable figure. Said clause 5 empowers the board to buy or lease sites for school houses, with the necessary school grounds, and it contains no requirement that the nec-

essary school grounds must all be contiguous to the school house site. We are therefore not authorized to give it such an interpretation, particularly in cases where it might be shown that it is not possible to purchase other suitable grounds contiguous to one or more sites already purchased. The statute necessarily gives a board of education large discretion in the selection of school grounds, and where there are a number of schools in a school district it is clearly evident that grounds not connected with any of the school sites might be used as playgrounds for the pupils of a number of schools, and would serve the necessity of such schools equally as well, or better, than if contiguous to any one site and at very much less cost.

It is also urged by appellants that the statute does not give boards of education power to buy school house sites on credit and subject to a vendor's lien or to any other kind of a lien. The purchase in question was not the purchase of a school house site but the purchase of necessary grounds to be used in connection with a school house or school house site or sites. Said section of the statute gives the board of education the power to purchase the ground in question. The purchase is not on credit and no obligation of the district is given for a debt. The property is simply purchased subject to the lien. By sections 189 and 117 of the School law the board of education is empowered to levy a tax annually upon all the taxable property of the district for educational and building purposes, not to exceed the limitations provided by the statute as to the amount levied, and when there is no money in the hands of the treasurer the board may issue warrants in anticipation of any tax levied, to the extent of seventy-five per cent of the total amount of the tax so levied. By the provisions of section 189 taxes for educational or incidental expenses do not include real estate or property purchased for a site or to be used in connection with a site but are included under the term "for building purposes." All taxes

so levied are included under the term "for educational purposes and for building purposes," and all payments must be made from one or the other of those two funds. (*Chicago and Alton Railroad Co.* v. *People,* 205 Ill. 625; *Koelling* v. *People,* 196 id. 353.) While the School law gives boards of education and directors the power to borrow money and issue bonds for the purpose of buying school house sites and building school houses, etc., yet those provisions and powers are not a limitation upon the power of the boards of education or boards of directors to levy taxes and pay for necessary grounds to be used in connection with building sites, when the same may be paid for by proper levies of taxes without making a debt. (*Folsom* v. *School Directors,* 91 Ill. 402; Hurd's Stat. 1917, sec. 139, p. 2672.) We see no reason why the board of education cannot levy an amount sufficient to discharge these liens in one payment if it can do so by agreement of the parties holding the liens and within the limitation provided for levying taxes, or to make levies and discharge the liens as they accrue. If the conveyance in question to the school board is to be treated in any part as a gift or donation, the board of education, under its powers as trustees of schools, was authorized to receive such gift or donation under section 39 of the School law.

Considerable argument is made by the parties in their briefs upon the question whether or not the act of June 23, 1915, entitled "An act giving to the trustees of schools, board of school inspectors, board of education or other corporate authority managing and controlling the public schools of any school district existing by virtue of any special charter and governed by any or all such special charters or special or general school laws of this State, and having a population of fewer than 500,000 inhabitants, the power to acquire property and to have the compensation to be paid therefor determined by the exercise of the right

of eminent domain," (Laws of 1915, p. 640,) authorized this board of education to purchase the ground in question for the purpose of a playground for school children. It seems that the legislature intended by that act to expressly give such board that power.

It is argued by appellants that the title is broader than the act, and that for that reason it cannot give such power to this board, because it is not governed by any of its old charter provisions or by any special school laws of this State. We do not deem it necessary to enter into a discussion of this question, as the board of education had the power, under the general school laws, to make such purchase, and it is not shown that it is wanting in power to do so by any of the allegations of the bill.

It is finally contended by appellants that the warrant for $2523.90 issued by the board of education in part extinction of the lien is void, because it is admitted by the demurrer that when said warrant was issued there were no funds in the hands of the treasurer and no tax levied from which it could legally be paid, and that said warrant was issued against taxes levied for building purposes and was not issued for the purpose of paying "the ordinary and necessary expenses of said district." We have already disposed of the question against appellants' contention as to what fund the warrant should be drawn against. The allegation in the bill that there were no funds in the hands of the treasurer and no tax levied from which it could legally be paid is a mere conclusion of law and was not admitted by the demurrer.

For the reasons aforesaid the decree of the circuit court is affirmed. *Decree affirmed.*