WILLIS F. FULK ET AL., APPELLANTS, V. SCHOOL DISTRICT NO. 8 OF LANCASTER COUNTY ET AL., APPELLEES.

53 N. W. 2d 56

Filed April 18, 1952. No. 33128.

*Joseph S. Wishart* and *Bartlett E. Boyles,* for appellants.

*Beghtol & Rankin, John C. Mason, Kenneth E. Anderson, Nate Holman, C. Russell Mattson,* and *Clark Jeary,* for appellees.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action in equity by Willis F. Fulk and Walter J. Olsen, residents, taxpayers, and electors of School District No. 8 of Lancaster County, Nebraska, plaintiffs and appellants, against School District No. 8 of Lancaster County, Nebraska, Ross Nisley, Conrad Leader, Robert N. Stall, Otto W. Endorf, Vance Ruckle, and John Te Selle, as members of the school board of the district and as individuals, Dale C. Sturdy, and Dorothy V. Sturdy, defendants and appellees, to have declared null, void, and of no effect a deed executed and delivered to the district on or about October 8, 1949; to have the district restored to the condition and situation occupied by it before the transaction was made and consummated; to have liability adjudicated against the members of the board and the defendants Sturdy for such restoration; and to have a trust impressed upon the lands described in the deed for the purpose of insuring restoration in whole or in part and for costs and attorney's fees.

There was a trial to the court at the conclusion of which findings of fact were made and a decree was rendered declaring valid the purchase represented by the deed and dismissing plaintiffs' petition.

Following the filing of a motion for new trial which was overruled the plaintiffs have appealed.

The assignments of error are: (1) That the court erred in finding that the district faced the alternative of purchasing a residence property or of closing its school, and that a local and statewide emergency existed in regard to such property; (2) that the court erred in finding that the residence of the superintendent is a part of the school system and is used for the necessary functions and duties of the superintendent, either as a matter of law or of fact; (3) that the court erred in finding that the acts of the school board and the members thereof in making the purchase and in expending the funds of the district were authorized and valid as a matter of law; and (4) that the decree infers that the purchase of the property is an authorized power of Class II school districts, and that such inference is erroneous as a matter of law.

The background of the action is substantially the following: During the year 1948 and prior to August 27, 1949, the defendant school district, which will be hereinafter referred to as the school district, was a school district which had been organized and was operating pursuant to Chapter 79, article 6, R. S. 1943. As a district under this organization it will be referred to hereinafter as an article 6 district. By legislative action in 1949 practically the entire body of the public school laws of the state was rewritten. By the school laws of 1949 this district became classified under Chapter 79, article 1, and denominated Class II. § 79-102, R. R. S. 1943. This legislation was approved May 21, 1949, and by operation of law became effective August 27, 1949.

As an article 6 district the district had a board consisting of six trustees. These trustees by the provisions of statute became the members of the board of the district under the new classification. § 79-104, R. R. S. 1943.

The corporate status and the existing rights and liabilities of the district were not changed. It was provided: "The adoption of this revision of the school laws shall not affect the corporate status of existing school

districts, nor disturb existing rights and liabilities * * *." § 79-103, R. R. S. 1943.

The school law with regard to this district before change of classification contained the following with regard to acquisition of and payment for a school site and building: "The qualified voters shall also have power at any annual or special meeting to direct the purchasing or leasing of any appropriate site and the building, hiring or purchasing of a schoolhouse, and the amount necessary to be expended the succeeding year, and to vote a tax on the property of the district for the payment of the same." § 79-210, R. S. 1943.

Section 79-203, R. S. 1943, provides in part as follows: "No schoolhouse site shall be changed nor taxes voted for building, purchase or lease of a schoolhouse at any district meeting unless notices shall have been given of such meeting, as above provided, including therein the fact that such subjects will then be considered."

The notices referred to are contained in this section and section 79-202, R. S. 1943. Section 79-202, R. S. 1943, invalidates any action of a special meeting in the absence of notice stating the object of the meeting. By the terms of section 79-203, R. S. 1943, the regular annual meeting is not invalidated by failure of notice. No schoolhouse site may be changed and no taxes may be voted for building, purchase, or lease of a schoolhouse at such meeting in the absence of notice. See State ex rel. Arterburn v. Cruise, 111 Neb. 114, 196 N. W. 116.

In the 1949 revision the following was substituted for all intents and purposes for section 79-210, R. S. 1943: "The qualified voters of a school district of the first or second class shall also have power at any annual or special meeting (1) to direct the purchasing or leasing of any appropriate site and the building, hiring, or purchasing of a schoolhouse or other school buildings, (2) to determine the amount necessary to be expended for such purposes the succeeding year, and (3) to vote a

tax on the property of the district for the payment of the same." § 79-506, R. R. S. 1943.

It will be observed that in this revised section appear the words "or other school buildings" whereas they did not appear in the old section.

The restrictive provisions of sections 79-202 and 79-203, R. S. 1943, with minor changes of no importance here appear in sections 79-502 and 79-503, R. R. S. 1943, which sections are a part of the revision of 1949.

The 1949 revision contains the following: "The school board or board of education shall (1) provide the necessary appendages for the schoolhouse, * * *." § 79-440, R. R. S. 1943.

The officers of the district, as an article 6 district, were a moderator, a director, and a treasurer. § 79-603, R. S. 1943. The officers were elected by the trustees. The officers after the revision are a treasurer, a secretary, and a president. § 79-701, R. R. S. 1943.

Among the duties of the president is to countersign all orders on the treasury for money to be disbursed by the district and all warrants of the secretary on the county treasurer for money raised for district purposes or apportioned to the district by the county superintendent. § 79-452, R. R. S. 1943.

The treasurer is the custodian of the funds of the district. It is his duty to apply for and receive the money apportioned to the district or collected for the district by the county treasurer. It is also his function to pay out the funds of the district on order of the secretary countersigned by the president. § 79-460, R. R. S. 1943. He is also required to give bond for the faithful performance of his duties. § 79-459, R. R. S. 1943.

On June 14, 1948, at the regular annual meeting of the district the following proceeding was had as shown by stipulation of the parties at the trial:

"Motion made by Ray Clark, seconded by Ross Nisley the School Board be authorized to provide a house for superintendent, not to exceed over $2,500.00, superin-

tendent to pay suitable rent. Eight votes for, two against, one not voting. Carried."

There appears to have been a notice of this meeting. Notice however was not given of any purpose to vote a tax for the building, purchase, or lease of a schoolhouse or other school building.

Nothing was done pursuant to this pretended authorization until September 27, 1949. On this date the record of the minutes indicates that there was a special meeting of the board. The portion of the minutes relating to this subject is the following:

"Motion by Ruckles Sec. by Endorff board act on June 14th 1948 Annual Meeting Motion of purchasing house for Superintendent not to cost over $2500.00 Voted by ballot 4 yes and 2 No Motion Carried."

Another special meeting of the board was held September 30, 1949. With reference to the subject under consideration here the following appears in the minutes:

"School board met at school house in special session at 8:00 P. M.

"Meeting was called by the chairman for the purpose of acting on June 14th 1948 Annual Meeting Motion of purchasing house for Superintendent.

"The board Voted to purchase the Dale C. Sturdy property for Superintendent Residence at $2500.00.

"Roll call Nisley yes Ruckles yes, Stall yes Endorff yes Leader yes TeSelle Not Voting. Carried"

Te Selle testified that at a later date he registered a negative vote. Whether or not this negative vote was recorded does not appear.

There is nothing to indicate that these were or were intended to be district meetings. They clearly were only special meetings of the board. Also there is nothing indicating that the action taken was communicated to the voters of the district.

On September 30, 1949, the officers of the district, namely the defendants Nisley, president, Leader, secre-

tary, and Stall, treasurer, caused to be paid to the defendants Sturdy $500.

By written instrument dated October 7, 1949, these three officers of the district on behalf of the district agreed to purchase Lots 1 and 2, Block 3, West Bennet, an addition to the Village of Bennet, Nebraska, which lots are located in the northwest quarter of the northwest quarter of the northeast quarter of Section 10, Township 8, Range 8, in Lancaster County, Nebraska, for $2,500. The instrument recited a previous payment of $500.

On October 8, 1949, the defendants Sturdy conveyed this real estate by warranty deed to the district. Three warrants were issued to them payable out of the funds of the district for the balance of the $2,500, one for $600 and two each for $700.

We think we may assume that the payments were made pursuant to the requirements of sections 79-452 and 79-460, R. R. S. 1943.

There was no grant of authority for any action taken in this respect other than that heretofore quoted herein as having occurred on June 14, 1948, and September 27 and 30, 1949.

This action of the board based upon the background which has been outlined was validated by the findings and decree of the district court.

Here the plaintiffs reassert the invalidity of the action taken on the grounds asserted in the district court.

Basic in the determination is the question of whether or not the district or the board had statutory power to do the thing which was here done. Unless they or one of them had such power the action is void.

In Ladd v. School District, 70 Neb. 438, 97 N. W. 594, it was said: "School boards are creatures of the statute and their powers are limited. They can bind the district only within the limits which the legislature has fixed; beyond that, their acts are void."

In American Surety Co. v. School District, 117 Neb.

6, 219 N. W. 583, it was said: "A school district is a creature of statute possessing no powers whatever beyond those given by the legislature, and is unable to contract, ad libitum, as individuals may do, but only respecting objects, and to the extent, the law permits."

In School District of Omaha v. Adams, 151 Neb. 741, 39 N. W. 2d 550, it was said: "It should be pointed out that a board of education is a creature of statute, and as such possesses no other powers than those expressly granted by the Legislature."

It follows as of course that where a contract is entered into by a school district without power so to do such contract may be declared void and invalidated in an appropriate action. Ladd v. School District, *supra;* Markey v. School District, 58 Neb. 479, 78 N. W. 932; Interstate Power Co. v. City of Ainsworth, 125 Neb. 419, 250 N. W. 649. The last case cited is not a case involving a school district but strictly speaking a municipal corporation, also a creature of statute with defined powers. In that case it was said: "A contract, entered into by a city without power, express or implied, so to do, is void, and its performance may be enjoined."

In the light of these principles and the powers of school districts of this class as defined by statute it becomes readily apparent that the first assignment of error must be sustained. We have not found therein any emergency power embracing this subject reposed by the Legislature in the district and none has been cited. Likewise we have been cited to no authority the effect of which is to say that there is such implied emergency power.

This court has made it clear that the power of a creature of statute does not flow from emergency, but only from statute. Speaking to this subject in State ex rel. Boxberger v. Burns, 132 Neb. 31, 270 N. W. 656, this court said: "The emergency, as serious as it appears to be, does not empower the county commissioners to

do anything except what they are empowered by law to do."

As to the second assignment of error it appears to be a proper statement that the question of whether or not a residence for the school superintendent was from a factual or practical viewpoint a need is not of controlling importance in determining the legality of this transaction. The controlling question is whether or not the legislative grant contains express or implied power to purchase a residence for the use and occupancy of the school superintendent. Unless it does contain such a grant then, as pointed out in the authorities considered in the discussion of the first assignment of error, the power does not exist.

The plaintiffs insist that there is no such grant of power. The defendants on the other hand insist that there is. They contend substantially that before revision the power flowed from the provision of section 79-210, R. S. 1943, permitting the voters to "direct the purchasing or leasing of any appropriate site and the building, hiring or purchasing of a schoolhouse." They contend substantially that after revision the power flowed from the provision of section 79-506, R. R. S. 1943, to "direct the purchasing or leasing of any appropriate site and the building, hiring, or purchasing of a schoolhouse or other school buildings."

It appears to be that in the former instance the contention is that residence for the superintendent is included within the meaning and definition of "schoolhouse." In the latter it appears that the contention is that residence for the superintendent is included in the meaning of the phrase "schoolhouse or other school buildings."

Numerous cases are cited in support of defendants' contention in this respect but only those from the state of Texas do so.

In Adams v. Miles (Tex. Civ. App.), 300 S. W. 211, in a paraphrase of a statute the court said that the

grant of power allowing the use of school funds for buying school sites, buying, building, and repairing, and renting schoolhouses "and for other purposes necessary in the conduct of public schools to be determined by the board of trustees," amounted to a grant of power to construct and operate dormitories for teachers. This holding was affirmed in Adams v. Miles (Tex. App.), 41 S. W. 2d 21. See, also, Landrum v. Centennial Rural High School Dist. (Tex. Civ. App.), 146 S. W. 2d 799.

Young v. Linwood School District No. 17, 193 Ark. 82, 97 S. W. 2d 627, one of the cases cited, holds that "school buildings" included within its meaning a gymnasium with rooms for home economics and other facilities for the training of students in activities contributing to broader life. This holding was sustained in a brief paragraph in Gibson v. State Board of Education, 201 Ark. 1165, 148 S. W. 2d 329.

Under a statute which authorized a school district to construct necessary appendages for a schoolhouse, the Kansas Supreme Court in Hemme v. School District, 30 Kan. 377, 1 P. 104, held that whether or not a well for the purpose of supplying water to a school was a necessary appendage was a question for a jury.

McNair v. School District No. 1, 87 Mont. 423, 288 P. 188, 69 A. L. R. 866, is a case which treats very comprehensively with what should be properly regarded as the over-all attributes of public education. The breadth as in that case presented appears to be inclusive of those things which contribute not only to the mental training of school children but also to physical well being and improvement and such other qualities as may be regarded as improving their fitness to fill better their place in the established order. In this light it was concluded a school gymnasium was within the meaning of law a schoolhouse. There is nothing in the opinion from which it might be inferred that the court intended to include within the term anything except that which

might be regarded as the educational plant or unit itself.

Reiger v. Board of Education, 287 Ill. 590, 122 N. E. 838, is a case where the court approved the purchase of land more than a block from the schoolhouse site for playgrounds and an athletic field. The approval was on the theory that these activities were a part of the educational program.

Alexander v. Phillips, 31 Ariz. 503, 254 P. 1056, 52 A. L. R. 244, is a case which holds that "schoolhouse" includes such buildings and structures as may be used for the dissemination of education and training including physical education. Pursuant to this holding the issuance of bonds for the construction of a stadium was approved.

In the case of Creager v. School District No. 9, 62 Mich. 101, 28 N. W. 794, no question of definition was involved. The only question presented was that of whether or not the director had power to contract for a fence around school property.

In certain jurisdictions the courts have concluded that housing facilities for teachers may not be regarded as schoolhouses or school buildings. Denny v. Mecklenburg County, 211 N. C. 558, 191 S. E. 26, is one of these. The question there involved appears in the opinion in the following language: "Does the special authorization to the counties of the State, * * *, to issue bonds and notes for the special purposes therein named, including the 'erection and purchase of schoolhouses' and their 'necessary equipment,' carry with it special authority to erect and maintain teacherages in connection with rural consolidated schools?" The question was answered as follows: "To hold as a matter of law that a teacherage is a part of the necessary equipment of a rural consolidated school would be to go farther than the General Assembly has gone, and, perhaps, entail some judicial engraftment. * * * A teacherage, which is to be run for profit and solely for the benefit of the

teachers, is not included within its terms."

Hansen v. Lee, 119 Wash. 691, 206 P. 927, is a case of like import. In this case it was said: "It is not necessary to cite authorities to support the statement that school districts and their directors have only such powers as are by statute given them. A careful reading of all of the provisions of statutes affecting this question * * * shows that they do not, either expressly or by reasonable implication, grant any power or authority to school districts * * * or to their board of directors, to erect dwellings for the use of school teachers." This language was quoted with approval in Denny v. Mecklenburg County, *supra.*

In Pennsylvania fourth class school districts are by statute empowered to purchase or build residences for principals, teachers, and janitors. In Freeport School District v. County of Armstrong, 162 Pa. Superior Ct. 237, 57 A. 2d 692, an action relating to the taxability of such property the court held it was not immune from taxation.

In a summary of numerous pertinent and illuminating observations in the opinion the court said in the concluding paragraph: "Although lawfully acquired, this real estate is not used nor to be used for public purposes, nor for the establishing of a public school system in the Commonwealth, nor for administering the same. Its use, on the contrary, is a private one, being at most a convenience to the school district, and at the same time that use is a commercial one, producing revenue. We do not deem it important that actual rent was charged, rather than a scheme of lowering the salary of the principal and giving the property rent-free. Unless specifically exempted by the Legislature, it is subject to taxation."

We think that the conclusions found in the cases sustaining the position of plaintiffs and the reasoning supporting them represent the basic attitude which has been extended uniformly by the courts of this jurisdiction

toward public school districts and their officers where the corporate form is set forth and the power is prescribed and circumscribed in the statute of their creation. Also we think this is the attitude which should be and remain implicit in the administrative and executive control of such organizations.

In this view we conclude that the purported purchase of the dwelling house in question was illegal and void for the reason that the school district was without power either by vote or by action of the board to make such purchase. It is neither a schoolhouse, nor another school building, nor an appendage for a schoolhouse.

Having come to this conclusion it becomes necessary to characterize the illegal and void action in order to ascertain the proper remedial attitude.

Cases in this jurisdiction hold to the view that where the action of the public organization is illegal and void not because of a lack of power but because of a failure to properly exercise existing power the organization is bound to the extent that it has received the benefits of the action. Grand Island Gas Co. v. West, 28 Neb. 852, 45 N. W. 242; Lincoln & Dawson County Irr. Dist. v. McNeal, 60 Neb. 613, 83 N. W. 847; Cathers v. Moores, 78 Neb. 17, 113 N. W. 119, 14 L. R. A. N. S. 298; Scheschy v. Binkley, 124 Neb. 87, 245 N. W. 267; Harms v. School District, 139 Neb. 714, 298 N. W. 549.

In a situation however where the action is ultra vires and no power exists to act in the premises at all no liability may be imposed upon the statutory creature. Ladd v. School District, *supra;* Markey v. School District, *supra;* Interstate Power Co. v. City of Ainsworth, *supra;* 10 McQuillin, Municipal Corporations (3d ed.), § 29.04, p. 165.

The necessary conclusion is that the action which is under inquiry here was taken without any power so to do by the district or its officers. It was ultra vires and therefore no liability therefor could attach to the district, and it was and is in nowise bound by the action.

Under the circumstances action by these voters and taxpayers is proper to restore to the district the funds which were illegally applied in payment of the purchase price.

The defendants urge that laches on the part of plaintiffs defeats their right to maintain action.

The petition herein was filed on January 7, 1950. The details as to the dates involved in the consummation of the purchase have been set forth hereinbefore. The record does not disclose that the plaintiffs and others occupying a like status in the district were informed of the events as they transpired. How long after the completion of the transaction the plaintiffs came into possession of the information in relation thereto does not adequately appear. Whether or not the action was ever publicized in the district likewise does not appear. It does appear that the action taken at the district meeting in June 1948 was known. It appears significant that the record discloses that efforts to carry into effect the expressed purpose of that action were at least temporarily abandoned because of voiced opposition in the district. It also appears significant that when more than a year later the board did put forth the effort to carry into effect the expressed purpose of the June 1948 meeting the matter was not resubmitted to the district at a regular meeting or one called specially for that purpose. Significant also, we think, is the fact, disclosed by the record, that at least some of the board had information from the office of the Department of Public Instruction that the Attorney General had by opinion ruled that school districts such as this had no statutory authority to purchase residences for superintendents.

Under these facts and circumstances, if this were a case where the rule with regard to laches had application, it could not well be said that these plaintiffs were guilty of laches.

Reasonably it may be said that the plaintiffs were

lulled into a false sense of security by a failure of the board to act promptly at least by making provision for a residence for the commencement of the next succeeding school term.

Reasonably it may be also said that the plaintiffs could not be required to assume that the board would attempt to exercise a power, if it had such power as it chose to exercise, except in a lawful manner, which was not done as is apparent from the statutory provisions heretofore quoted in this opinion.

Reasonably it may be inferred that the plaintiffs had no such notice as would have required or justified action on their part in advance of the completion of this pretended purchase.

The rules with reference to laches as a defense are collected and well stated in Geiss v. Trinity Lutheran Church Congregation, 119 Neb. 745, 230 N. W. 658. One of them, a quotation from a note to Felix v. Patrick, 145 U. S. 317, 36 L. Ed. 719, 12 S. Ct. 862, is the following: " 'The objection of laches is not tenable to defeat an equity cause, where there has been no material change in defendant's position, or in the subject-matter of the action, caused by plaintiff's delay; or where the plaintiff has been ignorant of his rights, or, though apprehensive of them, there was such an obscurity in the transaction that it was difficult to gain the facts upon which to maintain the action' * * *."

This statement in all of its elements appears to have application to the situation, and we think the first element has special application. It cannot well be said that there was any material change in the position of the defendants between the date of the completed transaction and the date of the filing of the petition herein.

There is another and more cogent reason why the plaintiffs must be allowed to prevail in this action. As pointed out the pretended purchase was not a mere irregularity. It was ultra vires and void. In any such case a taxpayer may institute appropriate action to test

the validity of the action and to have adjudicated the proper and appropriate remedy. Grand Island Gas Co. v. West, *supra;* Ladd v. School District, *supra;* Cathers v. Moores; *supra;* State ex rel. Arterburn v. Cruise, *supra;* Interstate Power Co. v. City of Ainsworth, *supra.*

The district court therefore erred in refusing to set aside the pretended purchase, and in refusing by its decree to restore the school district as nearly as possible to its situation before the illegal expenditure of its funds.

The pretended purchase being void the district as of course by the deed received nothing from the defendants Sturdy except color of title to the real estate. These defendants therefore are under a legal obligation to restore to the district the $2,500 received. Cathers v. Moores, *supra;* Neacy v. Drew, 176 Wis. 348, 187 N. W. 218; McCloud & Geigle v. City of Columbus, 54 Ohio St. 439, 44 N. E. 95; 10 McQuillin, Municipal Corporations (3d ed.), § 29.04, p. 170.

In Cathers v. Moores, *supra,* a recovery was not allowed but the language of the opinion draws the distinction between the cases where recovery may and may not be had against the other contracting party. The same substantial distinction is drawn in Neacy v. Drew, *supra.*

The following appears in the citation from 10 McQuillin, Municipal Corporations (3d ed.), § 29.04, p. 170: "The municipal corporation cannot in any manner bind itself by any contract which is beyond the scope of its powers, or entirely foreign to the purposes for which it was created, or which is forbidden by law, or which is against public policy, and, as stated, all persons contracting with the corporation are held to know the limitations in these respects. Hence, every contractor for the doing of public work is bound to take notice, not only of the terms of the ordinance under which the contract is made, but also of the provisions of the charter or statute under which the ordinance has been passed.

In brief, he is required to see not only that his contract complies substantially with the ordinance, but he is compelled to go further and ascertain whether the ordinance is authorized by the controlling law. So, persons dealing with quasi-public corporations, as counties, school districts and the like are bound to take notice of the power and authority of the officers and agents of such corporation. And it has been said that those who deal with the agents of a municipality must assume the risk that all necessary steps requisite to a legal contract have been taken. However, it has been held that where the municipality has power to enter into the contract, but does not observe the required formalities, persons dealing with the municipality need not take notice of the defects."

The rule is approved in McCloud & Geigle v. City of Columbus, *supra*. The court in the opinion set forth several observations which sustain the reasonable validity of the rule among which is the following: "An occasional hardship may accrue to one who negligently fails to ascertain the authority vested in public agencies with whom he deals. In such instances, the loss should be ascribed to its true cause, the want of vigilance on the part of the sufferer, and statutes designed to protect the public should not be annulled for his benefit."

The plaintiffs contend that there is also a liability against the members of the school board for authorization of the expenditure of funds. Of the authorities cited only one tends to support this contention. That one is the case of Burns v. Essling, 163 Minn. 57, 203 N. W. 605. In that it was held that a liability existed against the members of the board on account of the payment of a claim which had been audited and allowed by them which had not been authenticated as provided by law. It will be noted in this connection that there was direct participation in the act which gave efficacy to the instrument of payment.

Other authorities relied on are City of Blair v. Lantry,

21 Neb. 247, 31 N. W. 790; Superior Grade School District No. 110 v. Rhodes, 147 Kan. 29, 75 P. 2d 251; City of Lowell v. Massachusetts Bonding & Ins. Co., 313 Mass. 257, 47 N. E. 2d 265, 146 A. L. R. 750; Chicago Park Dist. v. Herczel & Co., 373 Ill. 325, 26 N. E. 2d 119; 4 McQuillin, Municipal Corporations (3d ed.), § 12.217, p. 176.

The effect of all of these authorities is to say in instances that the officers participating in the act which was held to be illegal were liable and in other instances that the officer having charge of the funds and his bondsman were liable.

We think that the appropriate rule should be, and it is so declared, that liability in situations such as this one can attach only to such officers and members of school boards as performed or participated in some act which gives efficacy to illegal expenditure.

As we view the record therefore no member of the board as such performed any such act. They did not on September 27 or 30, 1949, or at any other time do anything more than at most generally authorize the purchase of a residence. They did not directly or indirectly authorize the withdrawal of money from the funds of the district for the payment of the purchase price of this real estate.

The three officers, namely, the defendants Ross Nisley, Conrad Leader, and Robert N. Stall, did so perform. They executed a sales agreement and made a down payment. They, doubtless in the manner provided by statute, which required participation by all three, caused to be drawn and delivered four warrants in payment of the purchase price. For these acts they must be held liable.

Having concluded that the defendants Sturdy and the defendants Nisley, Leader, and Stall are liable it becomes necessary to declare the extent and limits of their respective liabilities. As a guide in this respect no precedent has been cited and none has been found. This however is an action in equity and it is the duty of

this court to equitably determine this question.

Therefore in the light of the record it does not appear equitable that the defendants Sturdy should be required to respond beyond or above the $2,500 received or the present value of the real estate, or $2,500 of its value should the present value exceed $2,500. It is apparent that they acted in good faith and if this had been a transaction between private persons their acts could not have been the subject of legal or other criticism.

If this will not restore the district to its status before the illegal expenditure was made, the defendants Nisley, Leader, and Stall should be required to respond.

The total response should be $2,500 with interest at the legal rate from the date of the respective payments and the costs of the litigation.

In their petition in the district court plaintiffs ask for attorney's fees for their attorneys. This question is of necessity not presented by the assignments of error since the plaintiffs did not prevail. We think however that in the light of what shall be the ultimate determination herein and of the fact that the case is triable de novo here that the right to attorney's fees should be considered.

On this question this court said in Higgins v. Case Threshing Machine Co., 95 Neb. 3, 144 N. W. 1037: "It is the practice in this state to allow the recovery of attorneys' fees only in such cases as are provided for by law, or where the uniform course of procedure has been to allow such recovery. As a general rule of practice in this state, attorneys' fees are allowed to the successful party in litigation only where such allowance is provided by statute." See, also, State ex rel. Charvat v. Sagl, 119 Neb. 374, 229 N. W. 118; Voss v. Voss, 144 Neb. 819, 14 N. W. 2d 849; Shepard v. Shepard, 145 Neb. 12, 15 N. W. 2d 195; Hawkeye Casualty Co. v. Stoker, 154 Neb. 466, 48 N. W. 2d 623.

We are not aware of a uniform course of procedure

whereby attorney's fees are allowable in cases such as this one or of a statute authorizing their allowance.

In conformity with and in furtherance of the conclusions arrived at herein the decree of the district court is reversed and the cause remanded with directions to render decree declaring that the sale and purchase of the real estate involved was and is void; that by the deed in question the school district obtained only color of title to the real estate and in actuality it remains the property of the defendants Sturdy; that the defendants Sturdy are indebted to the defendant school district in the amount of $2,500; that the defendants Sturdy be allowed 60 days from the date of the issuance of mandate herein to pay the $2,500; that for failure to pay the $2,500 within the allotted 60 days the court shall appoint a referee who shall sell the real estate as under execution; that on such sale if the amount received shall equal or exceed $2,500 the amount of $2,500 shall be paid to the defendant school district; if it shall exceed $2,500 the excess shall be paid to the defendants Sturdy; and if it shall be less, the amount so received shall be paid to the district.

If a sale shall be had due report thereof shall be made to the district court. In the event that the court shall then find that the sale was for less than $2,500 the court shall render judgment in favor of the school district and against the defendants Nisley, Leader, and Stall for the difference between $2,500 and the lesser amount received.

Whether the amount of $2,500 shall come to the district from the defendants Sturdy or by sale of the real estate or in part by sale and in part by judgment against the defendants Nisley, Leader, and Stall, judgment shall be rendered in favor of the school district and against the defendants Nisley, Leader, and Stall for interest at the legal rate on the payments made on the purchase from the respective dates of such payments until the date of payment of the $2,500 or judgment therefor.

All costs including the costs of sale, should sale be required, shall be taxed to the defendants Nisley, Leader, and Stall.

REVERSED AND REMANDED WITH DIRECTIONS.