REQUESTED BY: Douglas D. Christensen, Commissioner of Education
This opinion is written in response to your request for information on the distribution of "Chapter VI" federal grant funds to public and private schools in Nebraska. You asked two questions. Your questions and our responses are as follows:
1. Does § 79-319, as amended by LB 417 (1985 Session), allow the Nebraska Department of Education (NDE) to distribute "Chapter VI" (20 U.S.C. §§ 7301 et seq.) grant funds to Nebraska public districts for distribution to both public and private schools in their geographic jurisdiction, as contemplated under Chapter VI, without the use of a "by-pass" for private schools?
Similar to many other "flow through" federal grant programs, the Elementary and Secondary Education Act (ESEA) essentially provides that federal monies are allocated to the state education agency who in turn is to allocate the sums, less allowable state administrative costs, to the local education agency. See 20 U.S.C. § 7312. You have indicated that since the inception of the ESEA Title VI program and all its predecessor programs, NDE has utilized a "bypass" entity for non-public schools. ESEA authorizes the use of another entity to administer the funds in the event a state or local education agency is prevented by law from performing such a function.
 If by reason of any provision of law a State or local educational agency is prohibited from providing for the participation in programs of children enrolled in private elementary and secondary schools, as required by this section, the Secretary shall waive such requirements and shall arrange for the provision of services to such children through arrangements which shall be subject to the requirements of this section.
20 U.S.C. § 7372(d). The current bypass agent, according to your records, is the "Nebraska agent for non-public schools," which is under contract with the United States Department of Education to administer the portion of Subchapter VI funds to be used for the benefit of private school children pursuant to 20 U.S.C. § 7372(d)-(g).
We conclude that Neb. Rev. Stat. § 79-319 (1996) grants NDE the authority to receive Subchapter VI grant funds for distribution to public and private schools without the use of a bypass entity for private schools. However, no statutory authority exists granting local school districts the authority to act as a local education agency for purposes of consulting with private school officials and then providing them with their pro rata share of the funds in the form of secular, neutral, and nonideological services, materials, and equipment.
Article VII, § 11 of the Nebraska Constitution provides, in relevant part:
 The state shall not accept money or property to be used for sectarian purposes; Provided, that the Legislature may provide that the state may receive money from the federal government and distribute it in accordance with the terms of any such federal grants, but no public funds of the state, any political subdivision, or any public corporation may be added thereto.
By way of letter dated July 12, 1982, the Attorney General concluded that Neb. Const. Art. VII § 11 is not self-executing by its terms and, therefore, requires action by the Legislature to implement it.
Section 79-319 states, in relevant part, as follows:
 The State Board of Education has the authority to (5) receive and distribute according to law any money, commodities, goods, or services made available to the board from the state or federal government or from any other source and distribute money in accordance with the terms of any grant received, including the distribution of money from grants by the federal government to schools, preschools, day care centers, day care homes, nonprofit agencies, and political subdivisions of the state or institutions of learning not owned or exclusively controlled by the state or a political subdivision thereof, so long as no public funds of the state, any political subdivision, or any public corporation are added to such federal grants. . . .
We limit our review of § 79-319 to your specific question. Given its plain and ordinary meaning, § 79-319 appears to be enabling legislation to the extent that it gives NDE authority to receive grant funds from the federal government and distribute those funds in accordance with the terms of such grants, including distribution to political subdivisions of the state or to private schools (institutions of learning not owned or exclusively controlled by the state or a political subdivisions), so long as no public funds of the state, any political subdivision, or any public corporation are added to such federal grants.
The authority of school districts to receive the "Subchapter VI" federal grant funds for distribution to private schools within their geographic jurisdiction is set forth below. The local school board or board of education is the governing body of the school district. Neb. Rev. Stat. § 79-101 (1998 Cum. Supp.). Local school boards are creatures of statute with limited powers. "They can bind the district only within the limits fixed by the Legislature; beyond that, their acts are void. Fulk v. SchoolDistrict, 155 Neb. 630, 53 N.W.2d 56 (1952). Any action taken by a school board must be through either an express or implied power conferred by legislative grant. Id." School Dist. of Waterloov. Hutchinson, 244 Neb. 665, 667, 508 N.W.2d 832, 835 (1993).
"Every duly organized school district shall be a body corporate and possess all the usual powers of a corporation for public purposes. . . ." Neb. Rev. Stat. § 79-405 (1996). Chapter 79, Article 5 sets forth the powers belonging to the local school boards, their duties, and the manner in which the affairs of the school districts are to be managed and conducted. "The members of the school board are unquestionably regarded by statute as the servants or agents of the corporation, selected for the purpose of conducting and managing its affairs in the manner and under the restrictions pointed out by statute. They are an administrative body charged with the duty of administering the law governing the public schools within the city composing the school district of which they are officers. It is their duty to administer the affairs of the corporation as directed by statute in the exercise of such powers and authority as are vested in them." State v. Loechner, 65 Neb. 814, 819-20, 91 N.W. 874, 875
(1902).
"The general rule, even when corporate powers and privileges are strictly construed, is: `Corporations may transact, in addition to their main undertaking, all such subordinate and connected matters as are, if not essential, at least very convenient to the due prosecution of the former.'" Sorensen v.Chimney Rock Pub. Power Dist., 138 Neb. 350, 354, 293 N.W. 121,123 (1940) (citation omitted) (examined the authority of a public power district where the statute provided that it shall have all the usual powers of a corporation for public purposes).
"A school district is a creature of statute designated a body corporate, possessed of the usual powers of a corporation for public purposes as a convenient agency for exercising the authority that is entrusted to it by the state . . . Nickel v. School Board of Axtell, 157 Neb. 813, 61 N.W.2d 566, speaks of and treats a school district as a municipal corporation: `Questions of public policy, convenience, and welfare, as related to the creation of municipal corporations, such as counties, cities, villages, school districts, or other subdivisions, or any change in the boundaries thereof, are, in the first instance, of purely legislative cognizance. . . .'" Halstead v. Rozmiarek,167 Neb. 652, 660, 94 N.W.2d 37, 43 (1959).
"What is a public purpose is primarily for the Legislature to determine." United Community Serv. v. The Omaha Nat'l Bank,162 Neb. 786, 797, 77 N.W.2d 576, 585 (1956) (examined the authority of a public power district operating as a public corporation for purposes of determining the legality of an action taken by the public power district). "`A public purpose has for its objective the promotion of the public health, safety, morals, security, prosperity, contentment, and the general welfare of all the inhabitants.'" Id. (citation omitted).
In spite of the statutory authority provided to school districts, or local school boards as the governing body of school districts, and the case law analyzing that authority, the Legislature created school districts for the purpose of providing free education to the public as required by the Nebraska Constitution. "The Legislature shall provide for the free instruction in the common schools of this state of all persons between the ages of five and twenty-one years." Neb. Const. Art.VII, § 1. See Campbell v. Area Vocational Technical School No.2, 183 Neb. 318, 159 N.W.2d 817 (1968) (the purpose of a school district is to fulfill the constitutional duty placed upon the Legislature). Receiving federal grant funds for distribution to private schools in the form of services, materials, and equipment is not within the realm of the purpose for creating school districts, nor is it within their statutory authority as provided by the Legislature. Any such activity by school districts would be outside of their statutory authority and, therefore, void.
2. May Educational Service Units (ESUs), acting as LEAs, receive Title VI grant funds from NDE and use such funds to provide "services, materials and equipment" to children enrolled in private schools within their geographical boundaries?
Assuming that ESUs fall within the definition of LEAs (local education agencies) under the applicable federal law, we conclude that ESUs have the same statutory limitation which prevents school districts from receiving Subchapter VI grant funds for purposes of providing services, materials and equipment to children enrolled in private schools.
The Legislature created ESUs in 1965 for the purpose of providing supplementary educational services — such as special education, guidance, library and instructional material centers, vocational education and counseling — not otherwise available to local school districts. LB 301, 1965 (Introducer's Statement of Purpose). See also Frye v. Haas, 182 Neb. 73, 74,152 N.W.2d 121, 123 (1967).
As stated by Senator Ross Rasmussen, Chair of the Education Committee, on floor debate over LB 301, the goal was to provide rural Nebraska with the same educational opportunities as the larger urban areas, especially in the area of special services. The larger urban areas, such as Omaha and Lincoln, had the financial resources to provide extra services and were able to cooperate with federal matching funds. Each ESU, usually consisting of several counties, provides services not offered by school districts in rural Nebraska. ESUs are the entity in rural Nebraska to receive the federal matching funds which many rural school district would not otherwise qualify to receive.
Although there is statutory language in the Educational Service Units Act (codified at Article 12 of Chapter 79), which appears to allow ESUs to receive and distribute Subchapter VI federal grant funds to private schools, these statutes actually support the function of ESUs as intended by the Legislature. Neb. Rev. Stat. § 79-1204 (1998 Cum. Supp.) identifies the role and mission of ESUs. They have authority to receive and manage funds, including federal funds, "on behalf of school districts which choose to participate in special programs, projects, or grants. . . ." They provide core services to member school districts, with some of the core services identified and requested by the member school districts and other core services identified in § 79-1204(3). Other statutes in the Educational Service Units Act provide the ESUs with the necessary authority to carry out its purpose as intended by the Legislature and as set forth in § 79-1204.
In conclusion, § 79-319 gives NDE the authority to receive ESEA Title VI grant funds for distribution to private schools without the use of a bypass entity. However, neither school districts nor ESUs have the statutory authority to act as local education agencies for purposes of consulting with private school officials, and then providing those schools with their pro rata share of the funds in the form of secular, neutral, and nonideological services, materials, and equipment. Absent legislative change providing school districts or ESUs with such authority, NDE must continue to use a bypass entity in administering ESEA funds to private schools.
Sincerely yours,
 DON STENBERG Attorney General
 Charlotte R. Koranda Assistant Attorney General
Approved by:
Don Stenberg 
Attorney General